**No. 25-1236**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

STATE OF NEW YORK, et al.,

*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Rhode Island

## REPLY IN SUPPORT OF EMERGENCY MOTION
## FOR STAY PENDING APPEAL

YAAKOV M. ROTH
   *Acting Assistant Attorney General*

SARA MIRON BLOOM
   *Acting United States Attorney*

ERIC D. MCARTHUR
   *Deputy Assistant Attorney General*

DANIEL TENNY
SEAN R. JANDA
BRIAN J. SPRINGER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7537*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, D.C. 20530*
   *(202) 616-5446*
   *brian.j.springer@usdoj.gov*

## INTRODUCTION

This case concerns an injunction prohibiting agencies from carrying out Executive Orders issued by the President that direct agencies, where permitted by law, to pause or terminate funding that is inconsistent with the President's policy priorities. Plaintiffs do not suggest that it is unlawful for the President to issue such orders or for federal agencies to comply with them—nor could they, as the requirement to comply with federal law is built into the Executive Orders themselves. Nor do they deny that there are numerous circumstances in which pausing or terminating funding could be lawful, such as in the innumerable instances in which federal agencies have discretion regarding the allocation of funds. Recently, the Fourth Circuit properly, and unanimously, enjoined a preliminary injunction that prohibited federal agencies from carrying out a lawful Executive Order of this kind, and this Court should do the same. *See* Order, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025).

Plaintiffs' opposition largely amounts to asserting that a different injunction could be issued in different circumstances. They posit that a discrete agency action that was inadequately explained or inconsistent with a statute could be enjoined in an appropriate case. Fair enough. But although plaintiffs have sued twenty-three agencies, they do not identify specific funding decisions, much less unlawful decisions, taken by many of them. And even if they had, the remedy would be to prohibit the relevant

agency from relying on that decision, not to prevent broad swaths of the Executive Branch from following the President's lawful directives.

## ARGUMENT

### A.   The District Court's Injunction Is Erroneous

1. Plaintiffs do not dispute that the President may lawfully issue Executive Orders directing his subordinates to pause or terminate federal funding programs consistent with applicable law. Mot.9. Plaintiffs do not dispute that those directions are not subject to the APA's strictures. Mot.10. And plaintiffs do not dispute that agencies may lawfully implement those directions in many circumstances, because many federal funding programs provide the government with broad authority to pause or terminate grants or contracts. Mot.10.

These undisputed principles establish that the district court erred in enjoining defendants from "pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement" of certain funds to the plaintiff States "based on" any "funding freezes dictated, described, or implied by Executive Orders issued by the President." Dkt. No. 161, at 44. That injunction applies regardless whether any past or future funding determination complies with the terms of any relevant statutes, regulations, or funding instruments. But plaintiffs' own concessions reflect that, in many cases, agencies may lawfully rely on the President's Executive Orders to pause or terminate funding. And although plaintiffs seek to brush aside (at 19) the Executive Orders' express provisions that pauses and terminations should occur only to the

2

extent permitted by law, the D.C. Circuit has properly recognized that an analogous Executive Order was lawful precisely because "the Executive Order itself instruct[ed] the agency to follow the law." *Building & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) (alteration omitted).

Plaintiffs struggle to identify any unlawful action that would justify a preliminary injunction, much less the sweeping injunction issued by the district court. Instead, they state generically that they challenge "categorical funding freezes" by the "agency defendants"—without making a meaningful effort to identify specific agency actions other than the rescinded OMB Memorandum—and describe those "freezes" as "discrete and final agency actions." Opp.15. At most, plaintiffs suggest that they believe that the twenty-three agencies must have taken some final agency action, and seek to enjoin not only those unidentified actions but also potential future actions (which might be perfectly lawful).

To justify an injunction stretching—by plaintiffs' own description—across twenty-three agencies, thousands of programs, and hundreds of billions of dollars, one would expect plaintiffs to identify a similarly broad range of funding determinations that, in their view, do not comport with the relevant legal requirements. But most of the agencies that are now subject to the injunction are not mentioned in plaintiffs' opposition at all. Instead, plaintiffs identify four statutory schemes that they say leave agencies with "no discretion" over funding

3

determinations. Opp.3-4. Yet they do not point to any agency action directing employees to disregard those statutory mandates.

The nature of plaintiffs' claims only highlights the impropriety of the court's injunction. Although plaintiffs complain generically about agencies' explanations and consideration of reliance interests, they do not identify anything most defendants have actually done, much less identify flaws in any agency's explanation. Assessing the adequacy of an agency's decisionmaking inherently "depends on the specific facts of a particular" agency decision. *District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 57 (D.C. Cir. 2015). And indeed, many of the funding determinations implicated by this case may arise in the context of discretionary grant allocations where the APA's reasoned-decisionmaking requirements do not apply at all. *Cf. Lincoln v. Vigil*, 508 U.S. 182, 192-93 (1993). Similarly, determining whether any specific funding decision is contrary to law necessarily requires examining the specific provisions of the relevant statutes, regulations, and funding instruments—which in many cases provide agencies broad discretion to suspend and terminate funding. Nothing about those required context-specific determinations is amenable to plaintiffs' vague, broad-brush attack on thousands of decisions made across the federal government.

2. In short, the district court identified no illegality by the defendant agencies but nonetheless enjoined broad swaths of lawful conduct. Plaintiffs respond largely by changing the subject, spending much of their opposition (at 15-18) arguing that "funding freezes" are challengeable final agency action and are "reviewable" under the

4

APA. But regardless whether a challenge to an individual funding determination—or even a funding determination relating to an entire program—is cognizable under the APA, plaintiffs have identified no such decision here. They instead challenge, by their own account, unidentified past funding decisions across thousands of programs and an untold number of hypothetical future funding decisions. And that challenge—and the district court's similarly sweeping relief—runs squarely into the APA's limitation on leveling a "broad programmatic attack" rather than seeking review of discrete agency actions. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).

Plaintiffs similarly miss the mark when they assert that the district court's injunction is permissible because the court concluded that their specific challenge to the now-rescinded OMB Memorandum is not moot. Opp.20. Even assuming the district court's mootness decision is correct, the court's continued jurisdiction over plaintiffs' claims challenging a single OMB Memorandum in no way justifies the court's injunction against a broad swath of federal agencies' conduct untethered from the rescinded memorandum. As we previously noted, although the district court erred in its analysis of the OMB Memorandum, that error is not what gives rise to the need for an immediate stay. Mot.8-9.

Finally, plaintiffs defend an injunction that the district court did not issue, stating that the injunction allows agencies "to continue to make funding decisions in accordance with applicable legal authorities and grant terms," and to do so as "informed by the President's executive orders," Opp.23-24. Although any reasonable

5

injunction would permit such conduct, the injunction here does not. Mot.14. Plaintiffs may wish the district court had issued such tailored relief. But they cannot rewrite the terms of the injunction.

3. Nothing in the Impoundment Control Act salvages the district court's injunction. For one, plaintiffs cannot rehabilitate the district court's decision to grant an injunction that goes beyond the statute by forbidding the government from pausing funds rather than simply requiring the Executive Branch to send the message to Congress that the court thought was required. *See* Mot.14-15. In response, plaintiffs briefly suggest (at 14-15, 22) that the district court's injunction is proper because the court could have concluded that the challenged funding pauses are impermissible under the statute even if the relevant message is sent. But as plaintiffs do not dispute, the district court reached no such conclusion. *See* Dkt. No. 161, at 27. And the court's erroneous injunction cannot be rescued on the basis that the court could have, but did not, reach the conclusion that plaintiffs now urge. *Cf. NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1126 n.9 (9th Cir. 2024).

Regardless, even on its own terms, plaintiffs' argument is unpersuasive. Plaintiffs contend in a single sentence that the funding pauses at issue here are not based on "any of the reasons enumerated under the Act." Opp.22. But once again, plaintiffs do not address the specifics of any funding determination. It would be extraordinary to suggest that every pause or termination of an individual grant

6

necessarily rests on an impermissible basis, and any more context-dependent analysis would go far beyond what the district court or plaintiffs have done here.

Even setting that aside, plaintiffs cannot establish any right to enforce the Impoundment Control Act. Plaintiffs do not meaningfully dispute that the statute regulates the relationship between Congress and the Executive Branch, and it does not specifically contemplate private enforcement—instead providing for legislative remedies and suits brought by the Comptroller General. Mot.15-16. In response, plaintiffs state that "nothing in the Act states that APA review is precluded." Opp.21. But that does not matter. Congress may impliedly preclude APA review, *see* Mot.16—and that is precisely what the statute does.

Plaintiffs highlight the error in their analysis by claiming that the provision permitting suit by the Comptroller General is "immaterial here" because that provision only contemplates suits when the Executive does not make funds available for obligation, while this "case concerns only already obligated funds." Opp.21. Indeed, Congress has severely limited the circumstances in which the Comptroller General is authorized to seek judicial enforcement of the statute, both with respect to the subject matter over which he may sue and with respect to the timing of that suit. *See* 2 U.S.C. § 687 (requiring the Comptroller General to wait to bring suit "until the expiration of 25 calendar days of continuous session of the Congress" from the precipitating event). It would be a remarkable reading of the statute to suggest that private plaintiffs have an even broader authority to file suit than the Comptroller

7

General himself, and in particular that private plaintiffs, unlike the Comptroller General, need not allow Congress time to first consider legislative responses to any perceived violation.

In any event, plaintiffs nowhere establish that any—much less all—of the funding decisions they challenge implicate the Impoundment Control Act. Temporary pauses are generally not deferrals of budget authority subject to the statute's strictures. Mot.16-17. Plaintiffs do not dispute that basic point; instead, they contend that the challenged—though still unidentified—funding determinations are not short-term pauses because they "had no end date." Opp.22. But plaintiffs do not even attempt to explain why the presence or absence ex ante of an "end date" on a funding pause is relevant to the statutory analysis. To the contrary, the relevant question is whether the government is simply determining how to most efficiently allocate funds or is instead considering declining to obligate funds to create a reserve or achieve savings. *See* Mot.16-17. And that question does not turn on whether the government does or does not have a prescribed time period to make that efficient-allocation determination.

## B. The Remaining Factors Support a Stay

The district court's injunction prohibiting the defendants from "impeding the disbursement" of certain funds "based on" any "funding freezes dictated, described, or implied by" the President's Executive Orders, Dkt. No. 161, at 44, inflicts a direct harm on the government and the public. Plaintiffs continue to run away from any plausible interpretation of the order when they insist (at 24) that there is some

8

difference between "mak[ing] funding decisions, informed by the President's executive orders" and "across-the-board funding freezes." The President's Executive Orders direct agencies to pause certain funding where consistent with federal law. If the district court's injunction does not prohibit agencies from carrying out that directive, it is not clear what it does. And prohibiting agencies from carrying out the President's lawful orders causes irreparable harm.

Plaintiffs do not contest that the injunction allows them to bring all manner of funding disputes to a single district judge to pass judgment on compliance issues. *See* Mot.19. It is cold comfort that plaintiffs have thus far brought only "*two* disputes to the [district] court" in the less than two months "since the case was filed." Opp.26. That ignores that those two disputes alone involved hundreds of grants spanning dozens of grant programs administered by various agencies. *See* Dkt. No. 66, at 4-7; Dkt. No. 167, at 2-3. It ignores that one plaintiff State has already alleged a violation of this district court's orders in another case. *See* Plaintiffs' Motion for Contempt at 9-10, *Washington v. Trump*, No. 25-cv-244 (W.D. Wash. Mar. 6, 2025), Dkt. No. 243. And it ignores that plaintiffs can raise future objections whenever they dislike a funding decision made by any of the twenty-three agency defendants. *Cf.* Dkt. No. 160-1, at 18-24, 32-35 (plaintiffs' counsel previewing many additional objections).

Enforcement of the preliminary injunction is backed by the district court's contempt power. *See* Mot.19. Although plaintiffs have not yet "sought contempt in *this* case," Opp.26, one plaintiff State did so in another case, and plaintiffs in this case

9

affirmatively raised the possibility in their second motion to enforce, *see* Dkt. No. 160, at 1 n.1 (stating that plaintiffs did not seek "contempt at this time"). While the injunction may not formally require the defendant agencies to "seek or receive affirmative authorization from the district court before making funding decisions," Opp.26, they face the threat of contempt proceedings if plaintiffs later disagree with any one of those decisions. The court's nebulous prohibitions on "giving effect to" the OMB Memorandum "under a different name" and on pausing funds as "implied by" the President's Executive Orders, Dkt. No. 161, at 44—which plaintiffs either ignore or rewrite, *see* Opp.25—only heighten the risks of failing to comply.

Plaintiffs do not dispute that the government may well never be able to recover any funds that are disbursed pursuant to the preliminary injunction. *See* Mot.20. Conversely, plaintiffs admit that they will "receive the funds [legally] owed to them" if they succeed in litigation; their true grievance is about the timing of receiving payments. Opp.28. But plaintiffs do not identify any statute, regulation, or term in their funding instruments purportedly mandating such immediate payment. And even if they could, the proper recourse would be to file an appropriate legal action in the proper forum challenging the discrete funding decision. *See* Mot.21.

Similarly, vague assertions of "uncertainty" about plaintiffs' ability "to budget and plan their operations," Opp.28, hardly constitute the sort of certain irremediable injury necessitating such a wide-ranging injunction. Nor can these alleged harms outweigh the serious harm to the government and the public occasioned by the

district court's sweeping injunction preemptively impeding theoretical exercises of agency authority. At bottom, there is no sound justification for a single district court to assign itself the role of policing the full gamut of federal funding by numerous federal agencies, and this Court should stay the court's preliminary injunction that has that effect. At the very least, this Court should stay the preliminary injunction insofar as it prohibits the twenty-three agency defendants from "mak[ing] funding decisions, informed by the President's executive orders, in accordance with the agencies' statutory, regulatory, and contractual authority," Opp. 24—a prohibition that even plaintiffs do not defend.

## CONCLUSION

For the foregoing reasons and those in the government's motion, the Court should grant a stay pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

SARA MIRON BLOOM
  *Acting United States Attorney*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

DANIEL TENNY
SEAN R. JANDA

/s/ Brian J. Springer
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 616-5446*
  *brian.j.springer@usdoj.gov*

MARCH 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the reply contains 2,598 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

/s/ *Brian J. Springer*
BRIAN J. SPRINGER

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2025, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Brian J. Springer*
BRIAN J. SPRINGER