Case No. 25-1236

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

STATE OF NEW YORK, *et al.*

*Plaintiffs-Appellees*

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*

*Defendants-Appellants*

On Appeal from the District of Rhode Island,
No. 1:25-cv-00039 (McConnell, J.)

# AMICUS BRIEF OF THE COMMONWEALTH OF KENTUCKY
# IN SUPPORT OF DEFENDANTS-APPELLANTS' MOTION TO STAY

Russell Coleman
 *Attorney General*
Matthew F. Kuhn
 *Solicitor General*
Office of the Kentucky
 Attorney General
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for the Commonwealth of Kentucky*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTEREST OF AMICUS CURIAE & INTRODUCTION ......................................... 1

BACKGROUND ........................................................................................................ 1

ARGUMENT .............................................................................................................. 3

CONCLUSION .......................................................................................................... 9

CERTIFICATE OF COMPLIANCE ........................................................................ 10

CERTIFICATE OF SERVICE .................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022) ............................................................................................ 3

*Cameron v. EMW Women's Surgical Ctr.*,
  595 U.S. 267 (2022) ................................................................................... 4, 5, 9

*Commonwealth ex rel. Beshear v. Commonwealth Off. of the Governor ex rel. Bevin*,
  498 S.W.3d 355 (Ky. 2016) ................................................................................ 6, 7

*Commonwealth v. Roberta Coal Co.*,
  216 S.W. 584 (Ky. 1919) ..................................................................................... 4

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ............................................................................................ 3

*Johnson v. Commonwealth ex rel. Meredith*,
  165 S.W.2d 820 (Ky. 1942) ................................................................................ 4

*Overstreet v. Mayberry*,
  603 S.W.3d 244 (Ky. 2020) ................................................................................ 5

*Va. House of Delegates v. Bethune-Hill*,
  587 U.S. 658 (2019) ........................................................................................ 3, 4

**Statutes**

Ky. Rev. Stat. § 12.210 ............................................................................................. 4

Ky. Rev. Stat. § 15.010 ............................................................................................. 7

Ky. Rev. Stat. § 15.020 ............................................................................................. 5

Ky. Rev. Stat. § 15.700 ............................................................................................. 7

Ky. Rev. Stat. § 156.070 ........................................................................................... 7

Ky. Rev. Stat. § 15A.020 .......................................................................................... 7

Ky. Rev. Stat. § 160.160 ........................................................................................... 7

Ky. Rev. Stat. § 95.015 ............................................................................................. 7

Ky. Rev. Stat. § 95.440 ............................................................................................. 7

## INTEREST OF AMICUS CURIAE & INTRODUCTION

The Commonwealth of Kentucky, through Attorney General Russell Coleman, files this amicus brief to make a narrow point specific to the Bluegrass State. In particular, Kentucky's Governor Andy Beshear, who is an appellee here, lacks authority under Kentucky law to seek the expansive relief granted to him in the preliminary injunction. In fact, there does not appear to be any disagreement on this point from Kentucky's Governor, who is himself a former Kentucky Attorney General. In filing suit, Kentucky's Governor sued only on behalf of his office. The district court, however, overlooked the capacity in which Kentucky's Governor sued and granted him much broader relief—relief that seemingly extends to every agency of the Commonwealth that receives covered funds from a vast array of federal defendants.

Under Kentucky law, it is Kentucky's Attorney General, and him alone, who has authority to seek the broad, state-based relief that Kentucky's Governor secured below. The Attorney General, however, has chosen not to sue the Trump administration for the claims alleged here. Thus, if the Court does not stay the preliminary injunction for the reasons argued by the Trump administration, it should at least narrow the relief applicable in Kentucky so that it benefits only the office of Kentucky's Governor.

## BACKGROUND

Twenty-two States and the District of Columbia originally filed this lawsuit against officials in the Trump administration. Compl., R.1, PageID#1–44. When they amended their complaint a short time later, Kentucky's Governor joined as a plaintiff.

1

Am. Compl., R.114, PageID#7204, 7210–11. Kentucky's Governor did not purport to sue on behalf of the Commonwealth and all its agencies. Instead, he sued only on behalf of his office. Although the language used in the caption is a mouthful, Kentucky's Governor described himself this way: "Office of the Governor *ex rel.* Andy Beshear, in his official capacity as Governor of the Commonwealth of Kentucky." *Id.* at PageID#7204. And the listing of the parties in the complaint similarly stated that the Governor was suing in his official capacity for his office under the authority granted by Kentucky law. *Id.* at PageID#7210–11. So in these respects, the complaint made clear that Kentucky's Governor sued only on behalf of his office.

The remainder of the complaint, however, largely overlooked the status in which Kentucky's Governor sued. Although the complaint mentioned several alleged funding concerns in Kentucky, *id.* at PageID#7239, 7243, the complaint mostly grouped Kentucky's Governor together with the other "Plaintiff States" and treated the members of that group as the same, *e.g.*, *id.* at PageID#7206–08, 7212. At various points, the complaint alleged financial harms to numerous state or local agencies or constituencies within the "Plaintiffs States." The complaint alleged such harms to, among others, "public safety and law enforcement," "state and local government[s]," "[s]tate education systems," "[s]chool districts," "[s]tate institutions of higher education," and "[t]housands of nongovernmental and nonprofit organizations operating within the Plaintiff States." *Id.* at PageID#7243–48. Thus, although

2

Kentucky's Governor sued only on behalf of his office, the financial harms he alleged in the complaint went beyond that office.

On March 6, the district court granted the plaintiffs' motion for a preliminary injunction. Memo. & Order, R.161, PageID#8005–49. Although the plaintiffs filed that motion before Kentucky's Governor joined this suit, PI Mot., R.67, PageID#946–1023, the district court relied on the amended complaint that added Kentucky's Governor in granting injunctive relief, Memo. & Order, R.161, PageID#8019, 8022; *see also* PI Reply, R.147, PageID#7657 (joined by Kentucky's Governor). In granting injunctive relief based on the amended complaint, the district court awarded undifferentiated relief "to the States." Memo. & Order, R.161, PageID#8048–49. Thus, as written, the injunction appears to benefit any agency within Kentucky that receives covered funds from the federal defendants. *See id.*

**ARGUMENT**

A core attribute of a State's sovereignty is deciding who represents its interests in court. *See Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013). The States "typically" give their attorney general this job. *Id.* In fact, some States require that every state official be represented by the attorney general. *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663–64 (2019) (describing Virginia's practice). By contrast, other States allow their legislature to play a role alongside their attorney general in representing the State's interests. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 184–85 (2022) (describing North Carolina's practice). Regardless of what a State decides, federal courts

3

should respect the State's sovereign decision about who speaks for it in court. *See Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 277 (2022). After all, such a decision "belongs to" each State. *Bethune-Hill*, 587 U.S. at 664.

**A.** Kentucky has adopted a hybrid approach to representing the Commonwealth's interests in court. As the U.S. Supreme Court recently recognized, Kentucky has "empower[ed] multiple officials to defend its sovereign interests in federal court." *See Cameron*, 595 U.S. at 277–78. As explained below, Kentucky law allows the Governor to exercise litigation authority for his administration. But that litigation authority does not extend beyond his administration. The authority to represent the Commonwealth in civil litigation resides with only Kentucky's Attorney General.

For some of Kentucky's history, its Governor generally lacked authority to hire lawyers to represent his office or administration in court. The authority to represent the Commonwealth and its agencies was previously "centralized in the Attorney General and his staff." *See Johnson v. Commonwealth ex rel. Meredith*, 165 S.W.2d 820, 823 (Ky. 1942). In fact, "from time immemorial the Attorney General had advised and represented all the executive departments of government." *Id.* at 824; *accord Commonwealth v. Roberta Coal Co.*, 216 S.W. 584, 587–88 (Ky. 1919). That status quo changed when Kentucky's legislature adopted what is now Ky. Rev. Stat. § 12.210, which effectively enables the Governor to exercise litigation authority for his office and administration. *See Meredith*, 165 S.W.2d at 825. So under Kentucky law, Kentucky's Governor can go to court with

4

lawyers of his choosing to represent his administration's interests. *See Cameron*, 595 U.S. at 272, 277–78 (noting that the Governor's administration initially defended a Kentucky law against constitutional challenge). To be sure, the Governor can, and sometimes does, retain the Attorney General to represent his administration. *See id.* at 272 (noting that the Governor retained the Attorney General to present an oral argument). But the Governor need not do so.

The Governor's litigation authority, however, does not extend beyond his administration. The state official in Kentucky with litigation authority that extends beyond his office is the Attorney General. Under Kentucky law, the Attorney General is the "chief law officer of the Commonwealth of Kentucky and *all* of its departments, commissions, agencies, and political subdivisions." Ky. Rev. Stat. § 15.020(1) (emphasis added). As a result, the Attorney General has the authority and responsibility to "commence *all* actions . . . in or out of the state . . . in which the Commonwealth has an interest." Ky. Rev. Stat. § 15.020(3) (emphasis added). As the U.S. Supreme Court recently summarized, "it is the attorney general who is deemed Kentucky's 'chief law officer' with the authority to represent the Commonwealth 'in all cases.'" *Cameron*, 595 U.S. at 278 (citing Ky. Rev. Stat. § 15.020(1), (3)). In deciding how to pursue the Commonwealth's interests in courts across the country, the Attorney General is necessarily endowed with "broad discretion" to make litigation decisions for Kentucky. *See Overstreet v. Mayberry*, 603 S.W.3d 244, 265 (Ky. 2020). And importantly, the Governor's ability to oversee the legal representation of his administration does not

5

displace the Attorney General's overriding duty to represent the Commonwealth's interests in court. *See Commonwealth ex rel. Beshear v. Commonwealth Off. of the Governor ex rel. Bevin*, 498 S.W.3d 355, 363–64 (Ky. 2016).

**B.** Why does all this Kentucky law matter to a lawsuit filed against the Trump administration in Rhode Island? It matters because the limits on the Kentucky Governor's litigation authority dictate the scope of any relief he can secure against the federal government.

To be clear, although the Kentucky Attorney General respectfully disagrees with the Governor's decision to sue the Trump administration for the claims alleged here, the Attorney General has no quarrel with how the Governor denominated himself in the complaint. And despite the convoluted listing in the caption of the complaint, the Attorney General understands the Governor to have sued only on behalf of his office. Am. Compl., R.114, PageID#7204. By contrast, every other plaintiff sued the Trump administration as a State or as the District of Columbia through its respective attorney general. *Id.* at PageID#7209–12. As a result, based merely on the caption of the complaint, Kentucky's Governor is situated differently from every other plaintiff.

If the complaint had maintained this critical distinction throughout, it is unlikely that Kentucky-law problems would have arisen. But the remainder of the complaint grouped Kentucky's Governor together with the other "Plaintiff States" for purposes of describing their alleged legal injuries and the scope of relief they are seeking. By failing to differentiate Kentucky's Governor from the other plaintiffs in these respects,

6

the complaint alleged claims and sought relief that extend beyond the office of the Kentucky Governor.

Two examples make this point. First, the complaint described alleged financial harms to "public safety and law enforcement" within the "Plaintiff States." *Id.* at PageID#7243. Although Kentucky's Governor supervises the Kentucky State Police and the Department of Corrections, Ky. Rev. Stat. § 15A.020(1)(a), (1)(d), (2), he does not oversee all public-safety and law-enforcement personnel in the Commonwealth, *e.g.*, Ky. Rev. Stat. §§ 95.015, 95.440 (establishing local control of police and fire departments). In fact, the "chief law enforcement officer" in Kentucky is the Attorney General. Ky. Rev. Stat. § 15.700; *see also* Ky. Rev. Stat. § 15.010(2)(a) (establishing the Attorney General's Department of Criminal Investigations). Second, the amended complaint alleged financial harms to Kentucky's institutions of higher education and its school districts. Am. Compl., R.114, PageID#7244–45. But state universities in Kentucky operate with "fundamental independence" from the Governor. *See Beshear*, 498 S.W.3d at 381. And Kentucky public schools are not part of the Governor's administration. They are run in the first instance by locally elected school boards with oversight by the state board of education. Ky. Rev. Stat. §§ 156.070(1), 160.160(1).

The district court did not account for the mismatch between the Governor's litigation authority and the scope of relief he sought. This oversight is understandable, given how quickly this case moved and that the Governor did not join the case until after the parties had mostly briefed the motion for a preliminary injunction. *Compare* PI

7

Mot., R.67, PageID#946–1023; PI Resp., R.113, PageID#7129–203, *with* Am. Compl., R.114, PageID#7204–68. The fact remains, however, that the district court did not limit its preliminary injunction in Kentucky to the office of Kentucky's Governor. It instead granted him the same state-encompassing relief it granted to the other plaintiffs. Memo. & Order, R.161, PageID#8048–49 (enjoining the federal defendants from taking action as "to the States"). In effect, the district court mistakenly treated Kentucky's Governor as possessing the state-law authority of Kentucky's Attorney General. Thus, even if a preliminary injunction was appropriate, the district court went too far by granting Kentucky's Governor preliminary relief that he lacks authority to seek under Kentucky law.

Kentucky's Attorney General appreciates that the current emergency-motion posture is a difficult juncture to examine the nuances of Kentucky law, especially because this case progressed so quickly below that there was not a meaningful opportunity to address the issue.[1] But granting broad relief against the Trump administration within Kentucky to a state official without authority to seek such relief is no small matter from a federalism perspective. *See Cameron*, 595 U.S. at 277–78. Ultimately, at this stage, the Court need not get into the state-law issues discussed above. It should simply take Kentucky's Governor at his word as a former Kentucky Attorney General. He sued only on behalf of his office. Am. Compl., R.114, PageID#7204. Any

---

[1] For this reason, Kentucky's Attorney General is submitting this brief without prejudice to his ability to take additional steps in the district court or this Court as necessary.

8

preliminary relief ought to be accordingly limited. Thus, if the Court does not sustain the Trump administration's motion to stay, it should at least narrow the preliminary injunction as it relates to Kentucky to benefit only the Kentucky Governor's office. Any other result contradicts the Commonwealth's sovereign decision to structure itself so that only Kentucky's Attorney General can seek across-the-board relief in court on behalf of the Commonwealth.

## CONCLUSION

If the Court leaves the preliminary injunction in place pending appeal, it should direct that any relief as to Kentucky applies only to the office of Kentucky's Governor.

Respectfully submitted,

*s/ Matthew F. Kuhn*
Russell Coleman
 *Attorney General of Kentucky*
Matthew F. Kuhn
 *Solicitor General*
Office of Kentucky Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov

*Counsel for the Commonwealth of Kentucky*

## CERTIFICATE OF COMPLIANCE

This brief contains 2,125 words, excluding the portions omitted from the required word count. Although the appellate rules do not expressly provide a word limit for an amicus brief filed in this posture, the brief contains less than half the words allowed for a motion or response. *See* Fed. R. App. P. 29(a)(5) (allowing an amicus brief to be half the maximum length of a party's principal brief). This brief complies with the Court's typeface requirements because it has been prepared in Microsoft Word using 14-point Garamond font.

*s/ Matthew F. Kuhn*

**CERTIFICATE OF SERVICE**

On March 14, 2025, I filed an electronic copy of this brief with the Clerk of the First Circuit using the Court's electronic-filing system. That system sends a Notice of Docket Activity to all registered attorneys in this case.

*s/ Matthew F. Kuhn*