Nos. 25-1236, 25-1413

## UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY; COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NORTH CAROLINA; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN, OFFICE OF THE GOVERNOR OF KENTUCKY, ex rel. ANDREW BESHEAR, in their official capacity as Governor of the Commonwealth of Kentucky,

*Plaintiffs-Appellees*,
*(caption continued on inside cover)*

―――――――――

On Appeal from the United States District Court
for the District of Rhode Island

―――――――――

## BRIEF OF AMICUS CURIAE LEGAL SCHOLARS OF FEDERAL COURTS AND JURISDICTION IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

Joshua B. Shiffrin
J. Alexander Rowell
BREDHOFF & KAISER, P.L.L.C.
805 15th Street NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Fax: (202) 842-1888
jshiffrin@bredhoff.com
arowell@bredhoff.com
*Counsel for Amici Curiae*
Dated: July 25, 2025

v. DONALD J. TRUMP, in their official capacity as President of the United States; U.S. OFFICE OF MANAGEMENT AND BUDGET; RUSSELL THURLOW VOUGHT, in their official capacity as Director of the U.S. Office of Management and Budget; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in their official capacity as Secretary of the Treasury; PATRICIA COLLINS, in their official capacity as Treasurer of the U.S.; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in their official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF EDUCATION; LINDA MCMAHON, in their official capacity as Secretary of Education; U.S. FEDERAL EMERGENCY MANAGEMENT AGENCY; CAMERON HAMILTON, in their official capacity as Acting Administrator of the U.S. Federal Emergency Management Agency; U.S. DEPARTMENT OF TRANSPORTATION; SEAN P. DUFFY, in their official capacity as Secretary of Transportation; U.S. DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, in their official capacity as Secretary of Labor; U.S. DEPARTMENT OF ENERGY; CHRISTOPHER ALLEN WRIGHT, in their official capacity as Secretary of the U.S. Department of Energy; U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE M. ZELDIN, in their official capacity as Administrator of the U.S. Environmental Protection Agency; U.S. DEPARTMENT OF THE INTERIOR; DOUGLAS BURGUM, in their official capacity as Secretary of the Interior; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in their official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in their official capacity as Attorney General; NATIONAL SCIENCE FOUNDATION; DR. SETHURAMAN PANCHANATHAN, in their official capacity as Director of the National Science Foundation; U.S. DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in their official capacity as Secretary of Agriculture; U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT; SCOTT TURNER, in their official capacity as Secretary of Housing and Urban Development; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in their official capacities as Secretary of State and Acting Administrator of the United States Agency for International Development; U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT; U.S. DEPARTMENT OF DEFENSE; PETE HEGSETH, in their official capacity as Secretary of

Defense; U.S. DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS COLLINS, in their official capacity as Secretary of Veterans Affairs; U.S. DEPARTMENT OF COMMERCE; HOWARD LUTNICK, in their official capacity as Secretary of Commerce; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; JANET PETRO, in their official capacity as Acting Administrator of National Aeronautics and Space Administration; CORPORATION FOR NATIONAL AND COMMUNITY SERVICE; JENNIFER BASTRESS TAHMASEBI, in their official capacity as Interim Head of the Corporation for National and Community Service; U.S. SOCIAL SECURITY ADMINISTRATION; LELAND DUDEK, in their official capacity as Acting Commissioner of United States Social Security Administration; U.S. SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, in their official capacity as Acting Administrator of U.S. Small Business Administration,

*Defendants-Appellants.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................i

TABLE OF AUTHORITIES.................................................................ii

INTEREST OF AMICI CURIAE............................................................1

INTRODUCTION.................................................................................2

ARGUMENT .......................................................................................5

    I.   This Court has Subject Matter Jurisdiction over Plaintiffs' APA Claims Under *Bowen*. ........................................................................8

    II.   The Tucker Act Does Not Divest this Court's Jurisdiction to Provide Complete Relief under the APA. ...................................15

CONCLUSION .................................................................................25

CERTIFICATE OF COMPLIANCE.....................................................27

CERTIFICATE OF SERVICE............................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Pub. Health Ass'n v. NIH*,
No. 25-1611, __ F.4th __, 2025 WL 2017106 (1st Cir. July, 18, 2025) ..................................................4, 5, 10, 11, 19, 22, 23

*Am. Sci. & Eng'g, Inc. v. Califano*,
571 F.2d 58 (1st Cir. 1978) ..................................................... 17, 18, 25

*Atterbury v. U.S. Marshals Serv.*,
805 F.3d 398 (2d Cir. 2015) ............................................................... 18

*Bowen v. Massachusetts*,
487 U.S. 879 (1988). 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 23, 24, 25

*California v. Dep't of Educ.*,
132 F.4th 92 (1st Cir. 2025)................................................................ 23

*Cmty. Legal Servs. in E. Palo Alto v. HHS*,
137 F.4th 932 (9th Cir. 2025) ............................................... 4, 5, 19, 20

*Colorado v. HHS*,
No. 1:25-cv-121-MSM-LDA, 2025 WL 1426226 (D.R.I. May 16, 2025)...................................................................................... 4

*Dep't of Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999)............................................................................... 9

*Dep't of Educ. v. California*,
145 S. Ct. 966 (2025)............................................................... 3, 11, 17

*Maine v. Dep't of Agric.*,
No. 1:25-cv-131-JAW, 2025 WL 1088946 (D. Me. Apr. 11, 2025)..................................................................................................... 5

*Martin Luther King, Jr. Cnty. v. Turner*,
No. 2:25-cv-814-BJR, __ F.Supp.3d __, 2025 WL 1582368 (W.D. Wash. June 3, 2025) ................................................................ 22

ii

*Massachusetts v. Kennedy*,
No. 25-cv-10814-WGY, __ F.Supp.3d __, 2025 WL 1371785
(D. Mass. May 12, 2025) ........................................................ 4

*Me. Cmty. Health Options v. United States*,
590 U.S. 296 (2020) ................................................ 7, 15, 16

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ................. 7, 8, 17, 18, 21, 22, 23, 24, 25

*Merrill v. Milligan*,
142 S. Ct. 879 (2022) ............................................................ 3

*New York v. Dep't of Educ.*,
No. 25-1424 (2d. Cir. June 4, 2025) ...................................... 5

*New York v. Kennedy*,
No. 25-cv-196-MRD-PAS, __ F.Supp.3d __, 2025 WL
1803260 (D.R.I. July 1, 2025) ............................................... 4

*Rhode Island v. Trump*,
No. 1:25-cv-128-JJM-LDA, __ F.Supp.3d __, 2025 WL
1303868 (D.R.I. May 6, 2025) ............................................... 4

*In re Rivera Torres*,
432 F.3d 20 (1st Cir. 2005) ................................................... 9

*Sustainability Inst. v. Trump*,
No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ............... 5, 21

*United States v. Mitchell*,
463 U.S. 206 (1983) ............................................................. 6

*United States v. Sherwood*,
312 U.S. 584 (1941) ............................................................. 6

*Up State Fed. Credit Union v. Walker*,
198 F.3d 372 (2d Cir. 1999) ............................................... 17

*Widakuswara v. Lake*,
No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) . 10, 20, 21, 23

iii

*Widakuswara v. Lake*,
　　No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) ............ 5, 10

*Woonasquatucket River Watershed Council v. Dep't of*
　　*Agric.*,
　　No. 1:25-cv-97-MSM-PAS, 2025 WL 1116157 (D.R.I. Apr.
　　15, 2025) ................................................................................................ 5

## Statutes

5 U.S.C. § 702 ................................................................................... 6, 7, 15

5 U.S.C. § 706(2)(A) ............................................................................... 15

28 U.S.C. § 1346(a) ............................................................................... 3, 7

28 U.S.C. § 1491(a) ............................................................................... 3, 6

## INTEREST OF AMICI CURIAE

*Amici curiae* are leading legal scholars on federal courts, jurisdiction, remedies, and the adjudication of constitutional and statutory claims against the Federal Government and its officers and have great interest in the development of these areas of law. *Amici* are:[1]

- Erwin Chemerinsky, Dean, Jesse H. Choper Distinguished Professor of Law, University of California, Berkeley School of Law

- Michael C. Dorf, Robert S. Stevens Professor of Law, Cornell Law School

- Daniel Farber, Sho Sato Professor of Law, University of California, Berkeley School of Law

- Aziz Huq, Frank and Bernice J. Greenberg Professor of Law, University of Chicago Law School

- Kathryn E. Kovacs, Professor of Law, Rutgers Law School

- Ronald Levin, William R. Orthwein Distinguished Professor of Law, Washington University School of Law

- Jerry L. Mashaw, Sterling Professor Emeritus and Professorial Lecturer in Law, Yale Law School

---

[1] *Amici* join this brief as individuals; institutional affiliation is noted for informational purposes only and does not indicate endorsement by institutional employers of their positions.

# INTRODUCTION[2]

Plaintiffs allege that government actions to implement Presidential directives to categorically freeze or otherwise block grant funding violate multiple Constitutional obligations (including the separation of powers and Tenth Amendment), are contrary to law under the Administrative Procedure Act ("APA") because they violate statutory provisions including the Impoundment Control Act, and are arbitrary and capricious under the APA. A348–A362. They seek declaratory relief that this funding freeze violated the APA and Constitution, along with injunctive relief to enforce statutory, regulatory, and constitutional requirements governing agency action—they do not seek damages to compensate for losses on specific grants.

As in numerous other suits filed in the last several months challenging Government actions that impede the provision of billions of dollars of congressionally authorized grants, Plaintiffs successfully obtained preliminary injunctive relief based on their APA claims. The

---

[2] No counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund its preparation or submission. No person other than *amici* or their counsel made a monetary contribution to its preparation or submission. All parties have consented to the filing of this brief.

preliminary injunction entered below prohibits the Government agencies that are defendants in this action from "pausing, freezing, blocking, canceling, suspending, terminating, or otherwise impeding the disbursement of appropriated federal funds to the States under awarded grants, executed contracts, or other executed financial obligations" based on the Presidential directives at issue in the case. A44.

The Government now contends that the District Court does not have jurisdiction to adjudicate the merits of Plaintiffs' APA claims. U.S. Br. 44–49. Relying heavily on the Supreme Court's April 4, 2025, non-precedential[3] emergency stay order in *Department of Education v. California*, 145 S. Ct. 966 (2025), the Government argues that the Tucker Act, 28 U.S.C. §§ 1346(a), 1491(a), strips federal district courts of jurisdiction to decide Plaintiffs' APA claims and instead requires them to bring their claims in the Court of Federal Claims. U.S. Br. 44–49.

The Government misconstrues both the Tucker Act's effect on APA jurisdiction and the relief sought by Plaintiffs. In *Bowen v. Massachusetts*, 487 U.S. 879 (1988), the Court held that the Tucker Act

---

[3] An emergency decision is "not a decision on the merits." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring).

does not deprive district courts of jurisdiction with respect to APA claims that—like those asserted by Plaintiffs here—do not seek "money damages" for breach of contractual obligations, but rather seek declaratory and injunctive relief for violations of statutory and regulatory requirements. *See* 487 U.S. at 909–10. As we explain herein, the Supreme Court's *per curiam* order in *California* quoted and reaffirmed the central holding of *Bowen*, which "remains binding" on this Court. *Am. Pub. Health Ass'n v. NIH*, No. 25-1611, __ F.4th __, 2025 WL 2017106, at *6 (1st Cir. July 18, 2025), *application for stay filed*, No. 25A103 (U.S. July 24, 2025).

In light of *Bowen* and its progeny, the District Court, along with many others within this Circuit,[4] was correct to reject the Government's

---

[4] *See New York v. Kennedy*, No. 25-cv-196-MRD-PAS, __ F.Supp.3d __, 2025 WL 1803260 (D.R.I. July 1, 2025) (claims involving HHS terminations with resulting funding loss to states not foreclosed by Tucker Act); *Massachusetts v. Kennedy*, No. 25-cv-10814-WGY, __ F.Supp.3d __, 2025 WL 1371785, at *3–9 (D. Mass. May 12, 2025) (jurisdiction over challenge to agency directives curtailing NIH grants to blacklisted topics); *Rhode Island v. Trump*, No. 1:25-cv-128-JJM-LDA, __ F.Supp.3d __, 2025 WL 1303868, at *7 (D.R.I. May 6, 2025) ("[B]ecause the States' challenges are based on alleged statutory and constitutional violations and the relief they seek is equitable . . . they are not subject to the exclusive jurisdiction of the Court of Claims . . . ."); *Colorado v. HHS*, No. 1:25-cv-121-MSM-LDA, 2025 WL 1426226, at *6-9 (D.R.I. May 16, 2025) (retaining jurisdiction over APA challenges to termination of HHS

jurisdictional argument. *See, e.g.*, A68 ("That the Court's orders could give rise to the disbursement of funds to the States does not bar its jurisdiction under the APA . . . ."). This Court and other Courts of Appeals have reached the same conclusion in similar cases denying emergency stay motions. *See Am. Pub. Health Ass'n*, 2025 WL 2017106, at *4–8; *Cmty. Legal Servs. in E. Palo Alto v. HHS*, 137 F.4th 932, 937-39 (9th Cir. 2025); *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025).[5] The Court should join this emerging chorus and reject the Government's argument here as well.

## ARGUMENT

The United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any

---

grants because "[t]he case that 'directly controls,' and the one that the Court must follow, is Bowen."); *Woonasquatucket River Watershed Council v. Dep't of Agric.*, No. 1:25-cv-97-MSM-PAS, 2025 WL 1116157, at *1 (D.R.I. Apr. 15, 2025) (Plaintiffs' APA claims "are not simple contract actions for money damages, such that the Tucker Act would divest the Court of jurisdiction."); *Maine v. Dep't of Agric.*, No. 1:25-cv-131-JAW, 2025 WL 1088946, at *18–20 (D. Me. Apr. 11, 2025) (finding jurisdiction over APA claims even when the relief requested would likely result in the payment of money).

[5] *See also* Order, *New York v. Dep't of Educ.*, No. 25-1424, ECF No. 40, at 2–3 (2d Cir. June 20, 2025) (rejecting government's jurisdictional argument in APA challenge to recission of extensions of time to liquidate grant funding). Another court reached a contrary conclusion based on

court define the court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Section 702 of the APA, as amended in 1976, provides the requisite waiver of sovereign immunity in this case. *Bowen*, 487 U.S. at 891–92. It reads as follows: "An action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . ." 5 U.S.C. § 702. Section 702 also adds a condition to this broad grant of jurisdiction, stating that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

Additionally, the Tucker Act provides a waiver of sovereign immunity in the Court of Federal Claims for certain money damages suits against the United States. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Act grants jurisdiction to the Court of Federal Claims over actions based "upon any express or implied contract with the United States," 28 U.S.C. § 1491(a), or arising from certain "money-

---

unpersuasive reasoning that is discussed *infra* at 21–22. *See Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025).

mandating" statutes requiring the United States to compensate "a particular class of persons for past injuries or labors." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 324–25 (2020). The Act also provides that the Court of Federal Claims' jurisdiction over such contract actions is exclusive when damages exceed $10,000. 28 U.S.C. § 1346(a)(2).

Whether the APA's waiver of sovereign immunity applies to a particular suit in federal district court thus requires two separate but overlapping analyses. The first inquiry is whether the APA claim is an "equitable suit" which falls within the sovereign immunity waiver of APA § 702, or, conversely, is properly characterized as a suit for "money damages" as to which no sovereign immunity waiver exists under the APA. *Bowen*, 487 U.S. at 899–902. The second inquiry looks to whether the claim is "at its essence" contractual, with the legal source of the claim found in contract and the relief sought in the nature of contractual remedies, such that the Tucker Act would confer exclusive jurisdiction in

the Court of Federal Claims. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982).

Here, this Court has jurisdiction over Plaintiffs' APA claims because they are founded on statutory, rather than contractual, rights, and because Plaintiffs obtained an injunction ordering "the very thing to which [Plaintiffs were] entitled," *i.e.*, halting unlawful categorical freezes of funds obligated to the states. A68; *see Bowen*, 487 U.S. at 895, 910.

## I.   This Court has Subject Matter Jurisdiction over Plaintiffs' APA Claims Under *Bowen*.

**A.**   As *Bowen* remains the "guiding compass here," A67, we begin with a brief analysis of that opinion. In *Bowen*, Massachusetts challenged the Secretary of Health and Human Services' decision to deny the Commonwealth $6.4 million in reimbursements for medical and rehabilitation services. 487 U.S. at 883–91. In its APA suit, Massachusetts asked the court to "[e]njoin the Secretary and the Administrator from failing or refusing to reimburse the Commonwealth . . . the federal share of expenditures for medical assistance" and to "[s]et aside" the decision denying the reimbursement. *Id.* at 887 n.10. In ruling for Massachusetts, the Court rejected the Secretary's argument that relief in the district court was foreclosed by Section 702's exclusion of

suits for "money damages." *Id.* at 892–901. The Court noted that even if the Commonwealth's suit could be characterized as seeking "monetary relief" (at least in part), that relief was not synonymous with the term "money damages," which refers only to compensatory relief for a suffered loss. *Id.* at 894–96. As the Court put it, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* at 893–94; *cf. Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262–63 (1999) (APA suit to enforce equitable lien against the Government was an action for "money damages" because "equitable liens by their nature constitute substitute or compensatory relief rather than specific relief. An equitable lien does not 'give the plaintiff the very thing to which he was entitled.'" (quoting *Bowen*, 487 U.S. at 895)). Applying *Bowen*, this Court has likewise found that Section 702 "waived sovereign immunity for specific relief, such as recovery of money or properties wrongfully taken." *In re Rivera Torres*, 432 F.3d 20, 29 (1st Cir. 2005).

Courts continue to recognize *Bowen*'s distinction between "money damages" and claims that seek declaratory or equitable relief that may result in the transfer of funds. For example, this Court recently declined

to stay pending appeal a district court's decision vacating the NIH's categorical termination of grants, rejecting the Government's argument that the Tucker Act barred district court jurisdiction over plaintiffs' APA claims. *Am. Pub. Health Ass'n*, 2025 WL 2017106, at *4–8. In so doing, it emphasized that vacating the grant terminations was akin to the relief in *Bowen*, which "t[old] the United States that it may not disallow the reimbursement on the grounds given." *Id.* at *7 (quoting *Bowen*, 487 U.S. at 910). Likewise, the D.C. Circuit, sitting *en banc*, recently vacated a stay pending appeal that a three-judge panel issued on Tucker Act jurisdictional grounds in a case concerning grant terminations. *Widakuswara*, 2025 WL 1521355, at *1. The full court held that the government had failed to demonstrate that it would succeed on its Tucker Act jurisdictional argument and adopted the reasoning Judge Pillard provided in her dissent from the three-judge panel's decision to enter the stay. *Id.* Judge Pillard emphasized that *Bowen* "distinguished orders for specific relief . . . from money damages" and that "[w]hen plaintiffs seek funds under statutory entitlement, rather than as compensation for losses suffered, the funds are not 'money damages' for purposes of the Tucker Act." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 (D.C.

Cir. May 3, 2025) (Pillard, J., dissenting). As noted above, *see supra* n.4, many other district courts have reached similar conclusions under *Bowen*.

The Supreme Court's *per curiam* order in *California* did not overrule *Bowen* or otherwise change this analytic framework. Indeed, the Court re-affirmed *Bowen*, quoting its central holding. 145 S. Ct. at 968. It granted the Government's application for a stay pending appeal based on its preliminary conclusion, with little analysis, that—unlike the relief at issue here—the district court order at issue in that case sought "to enforce a contractual obligation to pay money." *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). As this Court recently noted, "*Bowen* remains binding . . . because only the Supreme Court is granted 'the prerogative of overruling its own decisions.'" *Am. Pub. Health Ass'n*, 2025 WL 2017106, at *6 (quoting *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989)). As we explain in the section that follows, *California* is inapposite here, where Plaintiffs have asserted an APA claim based on the Government's violation of constitutional, statutory, and regulatory obligations and have sought injunctive relief to "give the plaintiff[s] the

very thing to which [they are] entitled," *Bowen*, 487 U.S. at 895, not breach-of-contract damages.

**B.**    Here, the District Court correctly concluded that the injunctive relief Plaintiffs obtained under Section 702 is consistent with *Bowen*, which remains binding precedent. Plaintiffs challenge Defendants' "implementation of 'broad, categorical freezes on obligated funds,'" Dist. Ct. ECF No. 179 at 4, seeking relief from the Government's violation of the APA, Impoundment Control Act, appropriations laws, and the U.S. Constitution. *See* Dist. Ct. ECF No. 67 at 43–57; *see also* A362. The District Court granted preliminary relief on their APA claims,[6] enjoining Agency Defendants from "impeding the disbursement of appropriate federal funds to the States" based on the challenged Office of Management and Budget Directive, funding freezes contained in Executive Orders, or similar practices "under which the federal government imposes or applies a categorical pause or freeze of funding appropriated by Congress." A44. Thus, as the District Court recognized,

---

[6] While the District Court found it unnecessary to reach the constitutional claims to resolve the preliminary injunction motion, it noted "that the constitutional balance of powers issues that arise from the Executive's actions in this case are serious." A34 n.15.

Plaintiffs did not seek to enforce any contractual obligations or damages to compensate for past losses. Rather, they demanded injunctive relief to enforce statutory, regulatory, and constitutional requirements on government action. As such, as the District Court correctly explained, its "orders addressing the categorical funding freeze were *not* enforcing a contractual obligation to pay money." A67. Rather, the District Court's orders merely removed certain unlawful barriers affecting grant payments, just as the relief in *Bowen* prevented the government from disallowing payment "on the grounds given." 487 U.S. at 910. Put simply: "This matter is a claim about process, not damages." A67.

C.     Seeking to avoid this conclusion, the Government attempts to reframe the inquiry as one dependent upon Plaintiffs' subjective intent in bringing suit—that is, whether obtaining payment "was the entire aim of plaintiffs' endeavor" or "a mere by-product" of the suit. U.S. Br. 48 (quoting *Bowen*, 487 U.S. at 910). But the Government's approach—in which a court would be tasked with divining a plaintiff's ultimate goal in litigation—has no support in, and is contrary to, *Bowen.* The *Bowen* Court did not look to the Commonwealth's intent, but rather examined the nature of the remedy sought—i.e., whether it sought money damages

or a different form of relief. First, it explained that although the remedy issued in that case made it "likely that the Government will . . . reimburse Massachusetts the requested sum," that "outcome is a mere by-product of that court's primary function of reviewing the Secretary's interpretation of federal law." 487 U.S. at 909–10. Further, the Court concluded that the court would retain jurisdiction under the APA *even if* the remedy was "construed in part as orders for the payment of money," since an order that "und[id] the Secretary's refusal to reimburse the state . . . do[es] not provide relief that substitutes for that which ought to have been done" and therefore does not involve "money damages." *Id.* As such, the Commonwealth's desire to recoup $6,414,964 in disallowed reimbursement payments in *Bowen* did not give the Court of Federal Claims exclusive jurisdiction. *Id.*

So too here. The District Court has barred Defendants from categorically freezing grant funding to Plaintiffs on the grounds given. A44; A59. While that preliminary relief may result in the transfer of funds to Plaintiffs, these payments would be not only be the "mere by-product" of setting aside the challenged unlawful agency actions, but also

14

"the very thing to which [they] were entitled." *Bowen*, 487 U.S. at 895, 910.

## II.  The Tucker Act Does Not Divest this Court's Jurisdiction to Provide Complete Relief under the APA.

**A.**  As noted above, the APA's waiver of sovereign immunity is curtailed "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. The Government contends that this exception, combined with the Tucker Act's waiver of sovereign immunity for actions based on contracts with the United States, impliedly forbids plaintiffs from obtaining injunctive relief under the APA. U.S. Br. 45–46. But this exception should be read narrowly with regard to the Tucker Act, because the "Tucker Act yields when the obligation-creating statute provides its own detailed remedies, or when the [APA] provides an avenue for relief." *Me. Cmty. Health*, 590 U.S. at 323–24. Here, the APA provides the necessary avenue of relief for Plaintiffs. Section 706 of the APA allows district courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). And, as the Supreme Court recognized in *Bowen* and reiterated in *Maine Community Health* (while discussing another APA exception), the APA

15

"'is tailored' to '[m]anaging the relationships between States and the Federal Government that occur over time and that involve constantly shifting balance sheets.'" *Me. Cmty. Health*, 590 U.S. at 327 (quoting *Bowen*, 487 U.S. at 904–05 n.39).

In *Bowen*, the Court found that the "policies of the APA take precedence over the purposes of the Tucker Act. In the conflict between two statutes, established principles of statutory construction mandate a broad construction of the APA and a narrow interpretation of the Tucker Act." 487 U.S. at 908 n.46 (quoting with approval *Delaware Div. of Health & Soc. Servs. v. HHS*, 665 F.Supp. 1104, 1117–18 (D. Del. 1987)). Given these principles, the Tucker Act cannot be read to "impliedly forbid" the very avenue for relief that the statute that Plaintiffs rely upon here expressly sets forth.

Once again, nothing in *California* is inconsistent with this conclusion. There, the Court simply followed the established proposition that the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money," which the Court interpreted the district court to have ordered in the stay motion before it.

*See California*, 145 S. Ct. at 968. As the District Court recognized, that is not the case here. A66.

**B.**    To be sure, the Tucker Act does foreclose APA relief for a limited class of claims subject to Tucker Act jurisdiction. As this Court has recognized, a case which is "essentially a contract dispute" that is subject to the Tucker Act should be raised in the Court of Federal Claims instead of district court, regardless of how a plaintiff has labelled his or her claim. *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978). In this narrow context, when the relief sought is really just to enforce the terms of a contract, the Tucker Act may "impliedly forbid" injunctive relief under the APA.

In the years following *American Science and Engineering, Inc.*, several courts have turned to a two-part test to determine whether an APA claim against the United States is "at its essence" a disguised Tucker Act claim, examining (1) the source of the rights upon which the claim is based and (2) the type of relief sought. *Megapulse*, 672 F.2d at 968; *see also Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375–76 (2d Cir. 1999) (adopting "rights and remedies" test and noting the Fourth and Ninth Circuits have done the same). This inquiry is

17

consistent with this Court's analysis in *American Science and Engineering, Inc.*, which concluded that the claim at issue was contractual in nature given that the "core determination" before the court was "whether a breach of contract had occurred" and that the plaintiffs sought "enforcement of the agreements or monetary damages." 571 F.2d at 61.

In applying this test, courts have noted that "contract issues may arise in various types of cases where the action itself is not founded on a contract," but "the mere existence of such contract-related issues" does not mean that an action is at its essence a disguised contract action. *Megapulse*, 672 F.2d at 968–69. If the plaintiff's claim is not "based on rights derived from a contract," or if the remedies sought by the plaintiff are not "fundamentally contractual in nature," then the claim is not barred by the Tucker Act. *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 408 (2d Cir. 2015).

Accordingly, courts have emphasized—even after the order in *California*—that an APA claim is not barred from proceeding in district

court by the Tucker Act when the plaintiff's source of rights is statutory, regulatory, or constitutional, rather than solely contractual.

Just last week, this Court rejected the government's Tucker Act jurisdictional arguments in *American Public Health Association*, explaining that the plaintiffs' APA claims challenging the termination of NIH grants were not "premised upon the individual terms of the grant agreements" and the district court did not examine or interpret any grant terms to determine that the grant termination must be set aside. 2025 WL 2017106, at *7. The Court concluded that the district court likely had jurisdiction over claims that the government "violate[d] various federal statutes and the Constitution—classic examples of claims that belong in federal district court." *Id.*

Similarly, in *Community Legal Services,* for example, the Ninth Circuit, explained that "[i]f rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction," while exclusive jurisdiction exists in the Court of Federal Claims when "rights and remedies are *contractually* based." 137 F.4th at 938 (internal quotations omitted). At issue in that case was an APA claim to the effect that the government had violated various statutes and regulations with

19

respect to a decision to halt the disbursement of appropriated funding for direct legal services for unaccompanied children, which were provided by subcontractors through a nationwide contract. While, as here, the government contended that this was a disguised contract claim, the Ninth Circuit held that the government was unlikely to succeed in this argument and denied its requested stay, explaining that "plaintiffs seek to enforce compliance with statutes and regulations, not any government contract" and that doing such "is a matter beyond the scope of the Tucker Act's exclusive jurisdiction." *Id.*

The D.C. Circuit sitting *en banc* endorsed similar reasoning in Judge Pillard's opinion in *Widakuswara v. Lake*, which explained that the mere fact that appropriated funds were paid through grants did not transform a statutory claim into a contractual one. 2025 WL 1288817, at *12 (Pillard, J., dissenting). Instead, "[w]hat matters is what the court must examine to resolve the case," with a claim not being "in essence contractual" when it "depends on interpretations of statutes and

20

regulations rather than the terms of an agreement negotiated by the parties." *Id.*

The Fourth Circuit reached a different conclusion in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025). However, the reasoning in that decision, which cited the vacated D.C. Circuit majority decision from which Judge Pillard dissented, is unpersuasive. There, the majority concluded that a district court lacked jurisdiction to issue relief that directed the government "to restore Plaintiffs['] access to grant funds immediately" for 32 particular grants and prohibited freezing, terminating, or otherwise interfering with those grants without court authorization. 2025 WL 1587100, at *1 (quoting *Sustainability Inst. v. Trump*, No. 2:25-cv-2152-RMG, __ F.Supp.3d __, 2025 WL 1486979, at *4 (D.S.C. May 20, 2025)). In so holding, it emphasized that "it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds." *Id.* at *2.

The Fourth Circuit's analysis is at odds with the principle that "the mere existence of . . . contract-related issues" does not mean that a claim is "necessarily on the contract," such that courts retain "the power to make rational distinctions between actions sounding genuinely in

21

contract and those based on truly independent legal grounds." *Megapulse,* 672 F.2d at 968–70. Such a distinction has been made in numerous cases involving the disbursement of grant funds. *See, e.g.*, *Am. Pub. Health Ass'n*, 2025 WL 2017106, at *4–8 (rejecting government's Tucker Act argument in grant case where plaintiffs alleged violations of statutes and the Constitution that did not require examination or interpretation of grant terms); *Martin Luther King, Jr. County v. Turner*, No. 2:25-cv-814-BJR, __ F.Supp.3d __, 2025 WL 1582368, at *9 (W.D. Wash. June 3, 2025) ("[T]he source of Plaintiffs' rights resides in statutes and the Constitution," even when claims involved funding conditions imposed in grant agreements.).

Here, Plaintiffs' APA claims challenge Defendants' broad-based funding freeze, contending that it violates statutes including the Impoundment Control Act, numerous federal statutes setting forth requirements for grants to states, and the APA's prohibition on arbitrary and capricious action. Dist. Ct. ECF No. 67 at 54–57. In other words, Plaintiffs challenge whether "policy directives were unlawful in the face

of federal statutes appropriating funds for specific purposes."
*Widakuswara*, 2025 WL 1288817, at *14 (Pillard, J., dissenting).

Further, Plaintiffs do not assert any rights based on any term or
condition of any specific grant or contract, but instead raise statutory
claims; as the District Court held, "the terms and conditions of each
individual grant . . . *are not at issue*." A66. When a court need not
"examine[]" nor "interpret[]" grant terms, an APA claim raising statutory
and constitutional claims is properly brought in district court. *See Am.
Pub. Health Ass'n*, 2025 WL 2017106, at *7. By contrast, in *California v.
U.S. Department of Education*, this Court found that "the terms and
conditions of each individual grant award are at issue." 132 F.4th 92,
96–97 (1st Cir. 2025). In that case, unlike here, the plaintiffs sought to
enforce a regulation that only permitted the termination of grant awards
in accordance with the terms of the grant award, thus requiring the court
to examine the terms and conditions of individual grants. *See* Complaint,
¶ 183, *California v. Dep't of Educ.*, Case No. 1:25-cv-10548-MJJ, 769
F.Supp.3d 72 (D. Mass 2025), 2025 WL 725103 ("No term or condition for
any TQP or SEED grant award authorizes termination for failure to
effectuate agency priorities.") And even if Plaintiffs *could* have brought

contractual claims instead, such a potential argument is unavailing. *See Bowen*, 487 U.S. at 910 n.48 ("the fact that the purely monetary aspects of the case" could be brought under Tucker Act did not bar district court jurisdiction).

Moreover, the remedies sought by Plaintiffs are not "contract-related." *Megapulse*, 672 F.2d at 971. Plaintiffs seek declaratory relief that Defendants' funding freeze violates the APA and Constitution. A362. Plaintiffs also sought and obtained prospective relief to enjoin Defendants from undertaking actions implementing this freeze or similar actions going forward. *Id.* For the reasons detailed *supra* in Part I.C, the fact that this relief may ultimately lead to the transfer of money does not transform these remedies into the classic contractual remedy of money damages. *Bowen*, 487 U.S. at 893.

Nor is the injunction entered by the District Court akin to the unique contractual remedy of specific performance. The D.C. Circuit in *Megapulse* recognized the distinction between specific injunctive relief to enforce a statutory or regulatory obligation, such as that contemplated by *Bowen*, and the remedy of specific performance to enforce a contractual obligation. "[T]he mere fact that an injunction would require

24

the same governmental restraint that specific (non)performance might require in a contract setting is an insufficient basis to deny a district court the jurisdiction otherwise available . . . ." *Megapulse*, 672 F.2d at 971. This distinction is even clearer here, where Plaintiffs sought and obtained the halt of a broad-based funding freeze, not enforcement of provisions contained in individual contracts. Plaintiffs' requested declaratory and injunctive remedies are therefore far from "enforcement of the agreements or monetary damages" that points to a claim being essentially contractual. *Am. Sci. & Eng'g, Inc.*, 571 F.2d at 61.

## CONCLUSION

For the foregoing reasons, the District Court had subject matter jurisdiction to hear Plaintiffs' APA claims and to grant their Motion for Preliminary Injunction.

Respectfully submitted,

Dated: July 25, 2025              /s/ Joshua B. Shiffrin
                                 Joshua B. Shiffrin
                                 J. Alexander Rowell
                                 **Bredhoff & Kaiser P.L.L.C.**
                                 805 Fifteenth St. NW, Suite 1000
                                 Washington, D.C. 20005
                                 (202) 842-2600
                                 jshiffrin@bredhoff.com
                                 arowell@bredhoff.com

                                 *Attorneys for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 4997 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Century style font.

Dated: July 25, 2025                 /s/ Joshua B. Shiffrin
                                            Joshua B. Shiffrin

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025 I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 25, 2025                    /s/ Joshua B. Shiffrin
                                        Joshua B. Shiffrin