# Nos. 25-1236, 25-1413

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

STATE OF NEW YORK; STATE OF CALIFORNIA; STATE OF
ILLINOIS; STATE OF RHODE ISLAND; STATE OF NEW JERSEY;
COMMONWEALTH OF MASSACHUSETTS; STATE OF ARIZONA;
STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE
OF MAINE; STATE OF MARYLAND; STATE OF MICHIGAN; STATE
OF MINNESOTA; STATE OF NEVADA; STATE OF NORTH
CAROLINA; STATE OF NEW MEXICO; STATE OF OREGON; STATE
OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN,
OFFICE OF THE GOVERNOR OF KENTUCKY, ex rel. ANDREW
BESHEAR, in their official capacity as Governor of the Commonwealth
of Kentucky,
*Plaintiffs-Appellees*,
(*caption continued on inside cover*)

On Appeal from the United States District Court
for the District of Rhode Island
The Honorable John J. McConnell, Jr., District Judge
Case No. 1:25-CV-00039-JJM

## BRIEF FOR 157 MEMBERS OF CONGRESS
## AS *AMICI CURIAE*
## IN SUPPORT OF APPELLEES AND AFFIRMANCE

Maura Eileen O'Connor
THE BRENNAN CENTER FOR JUSTICE
AT NYU SCHOOL OF LAW
1140 Connecticut Ave., NW
11th Floor, Suite 1150
Washington, DC 20036
Telephone: (202) 249-7190

Brian A. Sutherland
Melanie C. Gold
COMPLEX APPELLATE
LITIGATION GROUP LLP
96 Jessie Street
San Francisco, CA 94105
Telephone: (415) 649-6700

*Attorneys for Amici Curiae*

*v.*

DONALD J. TRUMP, in their official capacity as President of the United States; U.S. OFFICE OF MANAGEMENT AND BUDGET; RUSSELL THURLOW VOUGHT, in their official capacity as Director of the U.S. Office of Management and Budget; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in their official capacity as Secretary of the Treasury; PATRICIA COLLINS, in their official capacity as Treasurer of the U.S.; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in their official capacity as Secretary of the Department of Health and Human Services; U.S. DEPARTMENT OF EDUCATION; LINDA MCMAHON, in their official capacity as Secretary of Education; U.S. FEDERAL EMERGENCY MANAGEMENT AGENCY; CAMERON HAMILTON, in their official capacity as Acting Administrator of the U.S. Federal Emergency Management Agency; U.S. DEPARTMENT OF TRANSPORTATION; SEAN P. DUFFY, in their official capacity as Secretary of Transportation; U.S. DEPARTMENT OF LABOR; LORI CHAVEZ-DEREMER, in their official capacity as Secretary of Labor; U.S. DEPARTMENT OF ENERGY; CHRISTOPHER ALLEN WRIGHT, in their official capacity as Secretary of the U.S. Department of Energy; U.S. ENVIRONMENTAL PROTECTION AGENCY; LEE M. ZELDIN, in their official capacity as Administrator of the U.S. Environmental Protection Agency; U.S. DEPARTMENT OF THE INTERIOR ; DOUGLAS BURGUM, in their official capacity as Secretary of the Interior; U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in their official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF JUSTICE; PAMELA J. BONDI, in their official capacity as Attorney General; NATIONAL SCIENCE FOUNDATION; DR. SETHURAMAN PANCHANATHAN, in their official capacity as Director of the National Science Foundation; U.S. DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, in their official capacity as Secretary of Agriculture; U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT; SCOTT TURNER, in their official capacity as Secretary of Housing and Urban Development; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in their official capacities as Secretary of State and Acting Administrator of the United States Agency for International Development; US AGENCY FOR INTERNATIONAL DEVELOPMENT; U.S. DEPARTMENT OF DEFENSE; PETE HEGSETH, in their official capacity as Secretary of Defense; U.S. DEPARTMENT OF VETERANS AFFAIRS; DOUGLAS COLLINS, in their official capacity as Secretary of Veterans Affairs;

U.S. DEPARTMENT OF COMMERCE; HOWARD LUTNICK, in their official capacity as Secretary of Commerce; NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; JANET PETRO, in their official capacity as Acting Administrator of National Aeronautics and Space Administration; CORPORATION FOR NATIONAL AND COMMUNITY SERVICE; JENNIFER BASTRESS TAHMASEBI, in their official capacity as Interim Head of the Corporation for National and Community Service; U.S. SOCIAL SECURITY ADMINISTRATION; LELAND DUDEK, in their official capacity as Acting Commissioner of United States Social Security Administration; U.S. SMALL BUSINESS ADMINISTRATION; KELLY LOEFFLER, in their official capacity as Acting Administrator of U.S. Small Business Administration,
*Defendants-Appellants.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29, no *amici curiae* is a nongovernmental corporation.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................. i

INTERESTS OF *AMICI CURIAE* ............................................ 1

SUMMARY OF ARGUMENT .................................................. 2

ARGUMENT ...................................................................... 4

I.  The President may not unilaterally withhold funds based on his own priorities or policy preferences. ............................................ 4

    A.  Congress has the exclusive power to appropriate funds and to make laws governing their use. .................................. 4

    B.  The executive orders required a funding freeze based on a misconception of presidential power. ............................ 7

II. The President's failure to carry out the law harms the constituents of *amici* and Congress itself. .................................. 10

    A.  The funding freeze harms people. ........................................ 10

    B.  The funding freeze harms the legislative process. ............... 15

CONCLUSION ................................................................ 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

APPENDIX: LIST OF *AMICI CURIAE*

# TABLE OF AUTHORITIES

## *Cases*

*Climate United Fund v. Citibank, N.A.*,
    No. 25-cv-698, 2025 WL 1131412 (D.D.C. Apr. 16, 2025) .................. 12

*Clinton v. City of New York*,
    524 U.S. 417 (1998) ........................................................... 5, 6

*Consumer Fin. Prot. Bureau v.*
    *Cmty. Fin. Servs. Ass'n of Am., Ltd.*,
    601 U.S. 416 (2024) .................................................................. 7

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*,
    447 U.S. 102 (1980) .................................................................. 7

*Elev8 Balt., Inc. v. Corp. for Nat'l & Cmty. Serv.*,
    Civ. No. MJM-25-1458, 2025 WL 1865971
    (D. Md. July 7, 2025) .............................................................. 11

*In re Aiken County*,
    725 F.3d 255 (D.C. Cir. 2013) ................................................... 6

*INS v. Chadha*,
    462 U.S. 919 (1983) ...................................................... 5, 6, 10

*James v. United States*,
    366 U.S. 213 (1961) .................................................................. 7

*Maryland v. Corp. for Nat'l & Cmty. Serv.*,
    Civ. No. DLB-25-1363, 2025 WL 1585051
    (D. Md. June 5, 2025) ............................................................ 11

*Mistretta v. United States*,
    488 U.S. 361 (1989) .................................................................. 4

*NCAA v. Alston*,
    594 U.S. 69 (2021) .................................................................... 7

*New York v. Trump,*
133 F.4th 51 (1st Cir. 2025)...................................................8

*New York v. Trump,*
769 F. Supp. 3d 119 (D.R.I. 2025) .......................................13

*New York v. Trump,*
C.A. No. 25-cv-39, 2025 WL 1009025 (D.R.I. Apr. 4, 2025) ...............12

*Sustainability Inst. v. Trump,*
No. 25-cv-2152, 2025 WL 1486979 (D.S.C. May 20, 2025).................13

*Thakur v. Trump,*
No. 25-cv-04737, 2025 WL 1734471 (N.D. Cal. June 23, 2025) .........12

*U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.,*
665 F.3d 1339 (D.C. Cir. 2012) ...........................................5

*United States v. Munoz-Flores,*
495 U.S. 385 (1990) ........................................................9

*Washington v. U.S. Dep't of Transp.,*
No. 25-cv-00848, 2025 WL 1742893
(W.D. Wash. June 24, 2025) ...............................................13

*Woonasquatucket River Watershed Council v. USDA,*
No. 25-cv-00097, 2025 WL 1116157 (D.R.I. Apr. 15, 2025).................13

*Youngstown Sheet & Tube Co. v. Sawyer,*
343 U.S. 579 (1952) ........................................................4

# TABLE OF AUTHORITIES
## (*continued*)

Page

### *Constitutional Provisions*

U.S. Const. art. I, § 2 ..............................................................9

U.S. Const. art. I, § 3 ..............................................................9

U.S. Const. art. I, § 8, cl. 1 .....................................................4

U.S. Const. art. II, § 3..........................................................6, 9

U.S. Const. amend. XVII .........................................................9

### *Statutes*

2 U.S.C. § 622 ........................................................................5

2 U.S.C. § 631 ......................................................................16

2 U.S.C. § 681 ......................................................................18

2 U.S.C. § 683 ......................................................................19

2 U.S.C. § 684 ......................................................................19

2 U.S.C. § 685 ......................................................................19

31 U.S.C. § 703......................................................................19

31 U.S.C. § 1301.....................................................................5

General Appropriation Act, 1951,
    ch. 896, 64 Stat. 595 (1950) ...............................................18

Impoundment Control Act of 1974,
    Pub. L. No. 93-344, tit. X, 88 Stat. 297 .......................*passim*

***Other Authorities***

Appropriations Comm. Democrats, *Trump's Unprecedented Funding Freeze Hits Communities Across America*, https://democrats-appropriations.house.gov/trumps-unprecedented-funding-freeze-hits-communities-across-america (last visited July 25, 2025) .............................................. 10, 11

Claire Brown, *E.P.A. Offers No New Evidence in Battle over $20 Billion in Climate Grants*, N.Y. Times (Mar. 17, 2025) ...................... 12

Congressional Research Service, R42388, *The Congressional Appropriations Process: An Introduction* (2016)................................. 16

Congressional Research Service, R44124, *Appropriations Report Language: Overview of Development and Components* (2023)............ 16

Congressional Research Service, RS20268, *Agency Justification of the President's Budget* (2008) ............................................................ 16

Michael A. DiNapoli Jr. et al., *States Face Uncertainty as an Estimated $6.2 Billion in K-12 Funding Remains Unreleased: Here's the Fiscal Impact by State*, Learning Pol'y Inst. (June 30, 2025) ..................................................................................... 11

Maggie Dresser, *Federal Funding Freezes Have Chilling Effect on Rural Domestic Violence Resources*, Flathead Beacon (Apr. 30, 2025) ..................................................................................... 12

The Federalist No. 47 ................................................................................. 5

The Federalist No. 51 ................................................................................. 5

The Federalist No. 58 ................................................................................. 9

H.R. Rep. No. 118-966 (2025).................................................................. 15

Impoundment Control Act–Withholding of Funds Through
  Their Date of Expiration, B-330330,
  2018 WL 6445752 (Comp. Gen. Dec. 10, 2018) .................................. 19

Cheyanne Mumphrey, *Head Start Funding Lags by Nearly $1
  Billion This Year, Causing Some Preschool Closures*,
  AP (Apr. 16, 2025) ................................................................ 14

Note, *Impoundment of Funds*,
  86 Harv. L. Rev. 1505 (1973) ................................................ 18

OMB, Exec. Off. of the President, Circular No. A-11,
  *Preparation, Submission, and Execution of the Budget*
  (July 2024) .......................................................................... 16

OMB, Exec. Off. of the President, Memorandum M-25-13
  (Jan. 27, 2025) ...................................................................... 8

OMB–Withholding of Ukraine Security Assistance, B-331564,
  2020 WL 241373 (Comp. Gen. Jan. 16, 2020) .......................... 5, 6, 9

Linda Qiu et al., *Trump's Funding Freezes Bruise a Core
  Constituency: Farmers*, N.Y. Times (Feb. 13, 2025) ............... 11

Morgan Rothborne, *Lomakatsi: Fed Funds Freeze Means
  Employee Layoffs, Fewer Prescribed Burns*, Ashland.news
  (Mar. 7, 2025) ...................................................................... 11

Selena Simmons-Duffin, *'Where's Our Money?' CDC Grant
  Funding Is Moving So Slowly Layoffs Are Happening*, NPR
  (June 28, 2025) .................................................................... 14

U.S. Department of Transportation, Federal Highway
  Administration–Application of the Impoundment Control Act
  to Memorandum Suspending Approval of State Electric
  Vehicle Infrastructure Deployment Plans, B-337137,
  2025 WL 1521234 (Comp. Gen. May 22, 2025) .................... 13

U.S. Gov't Accountability Off., GAO-16-464SP,
*Principles of Federal Appropriations Law* (4th ed. 2016) .....................5

Bianca Vázquez Toness, *More Than 20 States Sue Trump
Administration over Frozen After-School and Summer
Funding*, AP (July 14, 2025) .................................................................11

Chloe Veltman, *Sweeping Cuts Hit NEA After Trump
Administration Calls to Eliminate the Agency*,
NPR (May 5, 2025) .................................................................................13

Sara Wilson, Memorandum for All DOE Funding Agreements or
Awards (Jan. 27, 2025) ..........................................................................13

## INTERESTS OF *AMICI CURIAE*

*Amici curiae* listed in the attached appendix are members of Congress. They are interested in this case because they took an oath to uphold and defend the Constitution, and here, the President is attempting to override Congress's constitutional lawmaking authority. They are interested because they represent people who are irreparably harmed by the President's unlawful funding freeze. They are interested because the funding freeze harms Congress itself.

Congress depends on the predictable execution of the laws it writes. And it has enacted laws to ensure that it receives information it needs to appropriate funds effectively. The failure of the President and the Office of Management and Budget (OMB) to carry out the appropriations laws and to provide required information frustrates Congress's ability to legislate for the future.

With this brief, *amici* aim to assist the Court by explaining why the funding freeze is unlawful and harmful from the unique perspective of current members of Congress. All parties have consented to the filing of this brief. No person, other than *amici curiae* and their counsel, authored this brief in whole or in part or contributed funds intended to fund the preparing or submitting of this brief.

## SUMMARY OF ARGUMENT

Appropriations are laws. The President must take care to ensure that appropriations laws are faithfully executed, just like any other law. If a President wishes to change a law, including an appropriations law, the President must address that request to Congress. When a new President is elected, the laws of the United States are not wiped clean, and a new President may not overturn whatever laws they wish. Rather, for our system of government to function, the laws must be followed, and must have stable meaning across administrations, unless and until they are changed by Congress or enjoined by a court.

President Trump and OMB have acted to defeat the purpose of the appropriations laws in a manner that is both arbitrary and contrary to law. Through their orders and actions, they have unilaterally acted under the presumption that federal funding can be broadly frozen by fiat, in some cases indefinitely, until courts say otherwise. Their presumption is exactly backwards. The executive branch cannot freeze funding by fiat—that is, refuse to carry out appropriations made by law. If it wishes to defer the obligation or expenditure of any lawfully enacted appropriation, the executive branch must identify the statutory authority that allows such actions, and follow the conditions, procedures, and terms laid out by that provision of law and the

Impoundment Control Act of 1974. To allow the unilateral freezing of funds without a specific rationale would not only undermine the congressional intent behind the enactment of those laws, but also would subvert enacted statutes.

The funding freeze harms people in the districts and States *amici* represent by cutting off services, aid, and grants. The plaintiff States have provided evidence that the funding freeze irreparably harms residents. *Amici*'s own expert staff research confirms that the funding freeze is causing widespread harm to critical programs and the people they serve.

The funding freeze also harms the legislative process itself. Congress presumes that the executive branch will take care to carry out the appropriations laws as written. When the executive branch violates that expectation with a categorical freeze, it becomes difficult, if not impossible, for Congress to properly evaluate and enact new appropriations for the upcoming year and beyond. The President's unconstitutional freeze and failure to provide required information thus harm Congress's ability to legislate and impair the effective and constitutional operation of our system of government.

**ARGUMENT**

## I.  The President may not unilaterally withhold funds based on his own priorities or policy preferences.

A categorical funding freeze that fails to carry out the appropriations laws is unconstitutional. The President's orders and actions are based on a misconception of his authority.

### A.  Congress has the exclusive power to appropriate funds and to make laws governing their use.

While it is sometimes said that the Constitution creates three "coequal" branches, this is merely shorthand for the proposition that no one branch exercises the whole power of government.[1] When it comes to the specified powers that the Constitution grants to each branch of government, the separate branches are not equal at all. The power to make law belongs exclusively to Congress.[2] Under our Constitution, Congress alone has broad authority to impose taxes and appropriate funds to provide for our defense and general welfare.[3] This power is of

---

[1] *Mistretta v. United States*, 488 U.S. 361, 380 (1989).

[2] *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587-88 (1952).

[3] U.S. Const. art. I, § 8, cl. 1.

paramount importance, which is why it is dispersed among 435 representatives in the House and 100 senators.[4]

An appropriation is the legal authority to incur obligations and make payment from the Treasury for specified purposes.[5] Appropriations must be spent to fulfill their purpose.[6] Therefore, "unless Congress has enacted a law providing otherwise, the President must take care to ensure that appropriations are prudently obligated during their period of availability."[7] An appropriations law must be faithfully executed to implement congressional policy; it is not a mere recommendation for the President to consider.

A President may not like the purpose for which Congress appropriated funds, but this is not a permissible reason to refuse to

---

[4] *See INS v. Chadha*, 462 U.S. 919, 950 (1983) (recognizing "the need to divide and disperse power in order to protect liberty," including the legislative power, which "'necessarily predominates'" (quoting The Federalist No. 51)); *Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring) (citing The Federalist No. 47).

[5] *See* U.S. Gov't Accountability Off. (GAO), GAO-16-464SP, *Principles of Federal Appropriations Law* 2-3 (4th ed. 2016), https://www.gao.gov/assets/2019-11/675709.pdf; 2 U.S.C. § 622(2)(A)(i).

[6] *See* 31 U.S.C. § 1301(a); *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1348 (D.C. Cir. 2012) (Kavanaugh, J.).

[7] OMB–Withholding of Ukraine Security Assistance, B-331564, 2020 WL 241373, at *4 (Comp. Gen. Jan. 16, 2020).

carry out the law. The President and federal agencies may not decline to follow statutes that require expenditures, even if the President believes the expenditures to be contrary to the policy that the President would enact if they possessed appropriations authority.[8] If the President or agencies could decline to make expenditures based on policy disagreements, then the President alone would remake the law by honoring some statutes and disregarding others.[9]

After Congress passes a bill and a President signs it, the bill is enacted into law. A President may not then unilaterally change it.[10] If an incoming President believes that the law should change, then the President must "recommend" such changes to Congress for its "Consideration."[11] This process ensures that laws have stable meaning; they do not lose their force and effect merely because voters elect a new President. As the U.S. Supreme Court regularly states, those who wish

---

[8] *In re Aiken County*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.) ("[T]he President may not decline to follow a statutory mandate or prohibition simply because of policy objections.").

[9] OMB–Withholding of Ukraine Security Assistance, B-331564, *supra*, at *6 ("Faithful execution of the law does not permit the President to substitute his own policy priorities for those that Congress has enacted into law.").

[10] *Chadha*, 462 U.S. at 954 & n.18.

[11] U.S. Const. art. II, § 3; *Clinton*, 524 U.S. at 438.

to change the laws should address their request to Congress.[12] An appropriation is a law like any other under the Constitution.[13] Accordingly, if the President seeks to change an appropriation, he must address that request to Congress.

### B. The executive orders required a funding freeze based on a misconception of presidential power.

The executive orders and OMB memorandum at issue do not contain any analysis or reasoning particular to any law or facts. Instead, they impose a broad and categorical freeze on vast swaths of funding with no justification outside the stated intent to change United States policy to align with presidential priorities. Even if the freeze had been implemented on an individualized basis after a case-by-case funding analysis, the law precludes the President from even temporarily freezing or deferring funding based on his policy preferences alone.

---

[12] *NCAA v. Alston*, 594 U.S. 69, 96 (2021); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 124 (1980); *James v. United States*, 366 U.S. 213, 235 (1961) (Black, J., concurring in part and dissenting in part).

[13] *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 424 (2024) ("[A]n appropriation is simply a law that authorizes expenditures from a specified source of public money for designated purposes.").

In issuing executive orders and an OMB memorandum that froze all funding across a broad range of activities and agencies, the President and OMB presumed that all such funding *should* be halted—in some cases permanently—to permit the President to implement his own priorities and policy preferences. This was a categorical freeze on spending, emanating first from the President in his executive orders and then effectuated by OMB. As this Court concluded in ruling on defendants' stay motion, the relevant agencies did not make any individualized assessments about whether to defer spending, but instead complied with a broad executive command to halt.[14]

The President's and OMB's categorical funding-freeze orders directly contravene our constitutional design. The OMB memorandum initiating the categorical funding freeze seeks to implement the President's mistaken view that he alone embodies the popular will. It states, "Career and political appointees in the Executive Branch have a duty to align Federal spending and action with the will of the American people as expressed through Presidential priorities."[15]

---

[14] *See New York v. Trump*, 133 F.4th 51, 68-69 (1st Cir. 2025).

[15] OMB, Exec. Off. of the President, Memorandum M-25-13 (Jan. 27, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/03/M-25-13-Temporary-Pause-to-Review-Agency-Grant-Loan-and-Other-Financial-Assistance-Programs.pdf.

Not so. Voters do not vote for one person to carry their will into effect. The voters choose not only a President, but also representatives[16] and senators.[17] The Constitution gave the "power over the purse" to these "immediate representatives of the people"—representatives and senators in Congress—for "carrying into effect every just and salutary measure."[18] Members of Congress act collectively to pass laws which, if signed by a President or approved by two-thirds of both houses of Congress, will endure until some lawful countervailing force repeals or strikes them down.

President Trump and OMB are wrong to claim *his* priorities, policies, and requirements are a sufficient justification to override appropriations laws. His duty is to take care "that the Laws be faithfully executed,"[19] not to refuse to execute the laws.[20] Winning a presidential election does not give him a "mandate" to override our

---

[16] U.S. Const. art. I, § 2.

[17] U.S. Const. art. I, § 3; U.S. Const. amend. XVII.

[18] *United States v. Munoz-Flores*, 495 U.S. 385, 395 (1990) (quoting The Federalist No. 58).

[19] U.S. Const. art. II, § 3.

[20] OMB–Withholding of Ukraine Security Assistance, B-331564, *supra*, at *6 ("Faithful execution of the law does not permit the President to substitute his own policy priorities for those that Congress has enacted into law.").

nation's laws. Our federal laws are the product of a deliberate and "exhaustively considered" process,[21] and the bargains and compromises reflected in those laws are based on the assumption that the laws will be enforced. The President lacks authority to block them.

## II.    The President's failure to carry out the law harms the constituents of *amici* and Congress itself.

The President's unlawful orders and actions harm people by freezing funds for essential programs. And they harm Congress by hindering its ability to legislate.

### A.    The funding freeze harms people.

In addition to the irreparable harms identified by the plaintiffs, *amici*'s staff have compiled an extensive (but not exhaustive) list of programs affected by the President's unlawful funding freeze.[22] These programs serve people throughout the United States and in the home States of *amici*. Freezing funding for these programs directly harms constituents of *amici*.

---

[21] *Chadha*, 462 U.S. at 951.

[22] Appropriations Comm. Democrats, *Trump's Unprecedented Funding Freeze Hits Communities Across America*, https://democrats-appropriations.house.gov/trumps-unprecedented-funding-freeze-hits-communities-across-america (last visited July 25, 2025).

Under the Administration's orders, for example, the Department of Education has frozen funding for K-12 schools in every State, disrupting the ability of school districts to plan, budget, and spend federal payments for the upcoming school year.[23] AmeriCorps terminated agreements and removed members, affecting more than 1,000 programs and 30,000 AmeriCorps participants.[24] The Department of Agriculture has frozen funding for farmers to conserve their land and water.[25] And it has frozen funding to reduce wildfire risk.[26] As the court

[23] *See* Michael A. DiNapoli Jr. et al., *States Face Uncertainty as an Estimated $6.2 Billion in K-12 Funding Remains Unreleased: Here's the Fiscal Impact by State*, Learning Pol'y Inst. (June 30, 2025), https://learningpolicyinstitute.org/blog/states-face-uncertainty-k-12-funding-remains-unreleased; Bianca Vázquez Toness, *More Than 20 States Sue Trump Administration over Frozen After-School and Summer Funding*, AP (July 14, 2025), https://apnews.com/article/boys-girls-club-trump-grant-freeze-6f5bd3204d2973784d466e3f0fdb38b4.

[24] *See Maryland v. Corp. for Nat'l & Cmty. Serv.*, Civ. No. DLB-25-1363, 2025 WL 1585051, at *1 (D. Md. June 5, 2025); *Elev8 Balt., Inc. v. Corp. for Nat'l & Cmty. Serv.*, Civ. No. MJM-25-1458, 2025 WL 1865971, at *6-7 (D. Md. July 7, 2025).

[25] USDA has frozen funding for many programs. *See* Linda Qiu et al., *Trump's Funding Freezes Bruise a Core Constituency: Farmers*, N.Y. Times (Feb. 13, 2025), www.nytimes.com/2025/02/13/us/politics/trump-funding-freeze-farmers.html; *see generally Trump's Unprecedented Funding Freeze Hits Communities Across America*, *supra*.

[26] USDA and the Bureau of Land Management have frozen funds to remove fuels on forest grounds, affecting "some of the densest, most fire-prone places" in the country. Morgan Rothborne, *Lomakatsi: Fed Funds Freeze Means Employee Layoffs, Fewer Prescribed Burns*,

ruled in this case, FEMA has frozen numerous grants, leaving States and localities less able to respond to natural disasters.[27] The Environmental Protection Agency has frozen grants for solar installation and energy efficiency projects, which would reduce constituents' energy bills.[28]

The Department of Justice has frozen grants for numerous programs, including grants from the Office on Violence Against Women.[29] The National Science Foundation has terminated more than 1,600 grants, jeopardizing crucial research and innovation.[30] The

---

Ashland.news (Mar. 7, 2025), https://ashland.news/lomakatsi-fed-funds-freeze-means-employee-layoffs-fewer-prescribed-burns.

[27] *New York v. Trump*, C.A. No. 25-cv-39, 2025 WL 1009025, at *2 (D.R.I. Apr. 4, 2025).

[28] *See Climate United Fund v. Citibank, N.A.*, No. 25-cv-698, 2025 WL 1131412, at *4-5 (D.D.C. Apr. 16, 2025); Claire Brown, *E.P.A. Offers No New Evidence in Battle over $20 Billion in Climate Grants*, N.Y. Times (Mar. 17, 2025), www.nytimes.com/2025/03/17/climate/epa-gold-bars-climate-lawsuit.html.

[29] *See* Maggie Dresser, *Federal Funding Freezes Have Chilling Effect on Rural Domestic Violence Resources*, Flathead Beacon (Apr. 30, 2025), https://flatheadbeacon.com/2025/04/30/federal-funding-freezes-have-chilling-effect-on-rural-domestic-violence-resources.

[30] *See Thakur v. Trump*, No. 25-cv-04737, 2025 WL 1734471, at *5 & n.16 (N.D. Cal. June 23, 2025), *appeal docketed*, No. 25-4249 (9th Cir. July 10, 2025).

Department of Energy has frozen numerous grants for clean energy and nuclear energy projects.[31]

The National Endowment for the Arts has frozen many grants, leaving smaller artists without critical support.[32] The Department of Transportation has frozen grants for critical infrastructure, as the district court found in this case.[33] It has also frozen funding for electric vehicle charging stations.[34] The Department of Health and Human

---

[31] *See Woonasquatucket River Watershed Council v. USDA*, No. 25-cv-00097, 2025 WL 1116157, at \*6 (D.R.I. Apr. 15, 2025), *appeal docketed*, No. 25-1428 (1st Cir. May 1, 2025); Sara Wilson, Memorandum for All DOE Funding Agreements or Awards (Jan. 27, 2025), www.appropriations.senate.gov/imo/media/doc/250131_murray_kaptur_letter_to_doe_with_addendum.pdf (page 8 of PDF file).

[32] *See* Chloe Veltman, *Sweeping Cuts Hit NEA After Trump Administration Calls to Eliminate the Agency*, NPR (May 5, 2025), www.npr.org/2025/05/03/nx-s1-5385888/sweeping-cuts-hit-nea-after-trump-administration-calls-to-eliminate-the-agency.

[33] *New York v. Trump*, 769 F. Supp. 3d 119, 144 (D.R.I. 2025); *see Sustainability Inst. v. Trump*, No. 25-cv-2152, 2025 WL 1486979, at \*3 & n.5 (D.S.C. May 20, 2025), *appeal docketed*, No. 25-1575 (4th Cir. May 22, 2025).

[34] *See* U.S. Department of Transportation, Federal Highway Administration–Application of the Impoundment Control Act to Memorandum Suspending Approval of State Electric Vehicle Infrastructure Deployment Plans, B-337137, 2025 WL 1521234, at \*10-11 (Comp. Gen. May 22, 2025) (concluding that DOT improperly withheld funds to be expended under the National Electric Vehicle Infrastructure Formula Program); *Washington v. U.S. Dep't of Transp.*, No. 25-cv-00848, 2025 WL 1742893, at \*10-15 (W.D. Wash. June 24, 2025).

Services has frozen part of the funding for Head Start, causing some preschools to close their doors and sending families scrambling to try to find other preschool options.[35] The Centers for Disease Control and Prevention has frozen part of the funding for state and local health departments, causing these health departments to cancel prevention programs related to heart disease and stroke, HIV, and sexually transmitted infections, as well as to lay off public health staff who may not be available to return if the funding is ever made available again.[36]

These are only a few examples. The categorical funding freeze affects every department of government and tens of thousands of grants. The President has no authority to carry out a categorical freeze across all agencies, which defeats the purposes of appropriations and causes widespread harm.

---

[35] *See* Cheyanne Mumphrey, *Head Start Funding Lags by Nearly $1 Billion This Year, Causing Some Preschool Closures*, AP (Apr. 16, 2025), https://apnews.com/article/head-start-funding-preschool-child-care-closures-1f92fa98f320c7c14db63e69b986d11d.

[36] *See* Selena Simmons-Duffin, *'Where's Our Money?' CDC Grant Funding Is Moving So Slowly Layoffs Are Happening*, NPR (June 28, 2025), www.npr.org/sections/shots-health-news/2025/06/28/nx-s1-5442689/cdc-trump-layoffs-public-health-rescission.

**B.    The funding freeze harms the legislative process.**

Congress's legislative function—which is iterative and ongoing—requires the predictable execution of laws and information about the implementation of those laws. Congress's constitutional appropriations function is no different. In determining how much funding to appropriate for any activity, now or in the future, Congress presumes that the executive branch will prudently obligate and expend previous appropriations, thus carrying out the enacted laws. If Congress cannot trust the executive to carry out appropriations laws, it cannot legislate wisely or effectively, and will not know whether or how much to appropriate for an activity at any given time.

The statutory structure of the annual budget-and-appropriations process—through which Congress has annually appropriated at least $3 trillion in recent years—reflects Congress's need for reliable execution of the appropriations laws.[37] The statutes provide that the President

---

[37] *See* H.R. Rep. No. 118-966, at 8-11 (2025), https://www.congress.gov/118/crpt/hrpt966/CRPT-118hrpt966.pdf.

will submit a detailed budget,[38] after which agency personnel may submit additional materials to relevant House and Senate appropriations committees.[39] After receiving materials from federal agencies, the appropriations subcommittees compile written reports to accompany appropriations bills.[40] These reports are typically the subject of extensive input and contain detailed directions for applying federal funds, some portions of which are often statutorily incorporated to give them the force of law.[41] This statutory process is repeated in both chambers of Congress, and requires extensive interbranch coordination and precise targeting of funding to match ongoing needs.

---

[38] 2 U.S.C. § 631; Congressional Research Service, R42388, *The Congressional Appropriations Process: An Introduction* 2 (2016), https://crsreports.congress.gov/product/pdf/R/R42388; *see* OMB, Exec. Off. of the President, Circular No. A-11, *Preparation, Submission, and Execution of the Budget* (July 2024), https://bidenwhitehouse.archives.gov/wp-content/uploads/2018/06/a11.pdf.

[39] *The Congressional Appropriations Process: An Introduction*, *supra*, at 3; Congressional Research Service, RS20268, *Agency Justification of the President's Budget* 1 (2008), www.congress.gov/crs_external_products/RS/PDF/RS20268/RS20268.8.pdf.

[40] Congressional Research Service, R44124, *Appropriations Report Language: Overview of Development and Components* 1 (2023), https://sgp.fas.org/crs/misc/R44124.pdf.

[41] *See id.* at 2-5.

This process breaks down when, as here, the President refuses to obligate or expend appropriated funds. Unlawful impoundments subvert the interbranch coordination inherent in the annual budget and appropriations process: They create doubt about whether hard-fought compromises and trade-offs will be honored, which deprives lawmakers of the incentives to make deals and threatens to make it impossible to pass appropriations laws. An arbitrary across-the-board freeze creates even more confusion because Congress does not know whether or when the President will "unfreeze" any given funds. When funds are frozen, Congress does not know whether the President's intent was to cancel the program or alter spending levels, both of which are beyond his authority. Either way, Congress cannot appropriate funds effectively when the President's enforcement of appropriations laws is unpredictable. This subversion of trust applies not just to the annual budget and appropriations process, but to the myriad appropriations considered in authorizing legislation at both *ad hoc* and regular intervals.

The President's categorical funding freeze also violates the Impoundment Control Act of 1974 (ICA), and thus defies congressional authority to control appropriations. Before Congress enacted the ICA, the Antideficiency Act had permitted a President to establish "reserves

. . . to provide for contingencies, or to effect savings whenever savings are made possible by or through changes in requirements, greater efficiency of operations, *or other developments subsequent to the date on which an appropriation is made available.*"[42] The Nixon Administration purported to rely on the "developments subsequent" provision of the Antideficiency Act in freezing funds.[43] The ICA amended the Antideficiency Act to remove that authority.[44]

Under the ICA, the President's authority to defer or withhold appropriated funds is extremely limited and does not authorize the categorical freeze at issue here.[45] Deferrals are permissible only to provide for contingencies, achieve savings made possible by or through changes in requirements or greater efficiency of operations, or as

---

[42] General Appropriation Act, 1951, ch. 896, § 1211, 64 Stat. 595, 765-66 (1950) (emphasis added) (amending Section 3679 of the Revised Statutes).

[43] *See* Note, *Impoundment of Funds*, 86 Harv. L. Rev. 1505, 1517 (1973).

[44] Impoundment Control Act of 1974, Pub. L. No. 93-344, tit. X, § 1002, 88 Stat. 297, 332.

[45] This limited authority to defer or withhold does not supersede "any provision of law which requires the obligation of budget authority or the making of outlays thereunder." 2 U.S.C. § 681(4).

required by law.[46] Conforming to the President's policy preferences is not a permissible reason for deferral under the ICA.

Even if the President had a valid reason for seeking to defer or withhold appropriated funds, the ICA requires the President to transmit a "special message" *before* deferring or withholding appropriated funds.[47] The "special message" must provide a detailed analysis of all circumstances pertaining to the deferral or proposed rescission of funding.[48] Once the special message is delivered, the Comptroller General, the director of the Government Accountability Office (GAO), reviews the proposed spending deferral to assess whether it "is in accordance with existing statutory authority," including whether any withheld funding is permitted to be frozen within the limits of the specific authority granted by the ICA.[49]

---

[46] *Id.* § 684(b).

[47] *Id.* §§ 683, 684(a).

[48] *Id.* § 684(a)(6).

[49] *Id.* § 685(b)(2). The President appoints the Comptroller General, by and with the advice and consent of the Senate, to a fifteen-year term. 31 U.S.C. § 703(a)(1), (b). The President may *not* remove the Comptroller General. He or she may be removed only by impeachment or joint resolution of Congress. *Id.* § 703(e)(1); *see* Impoundment Control Act–Withholding of Funds Through Their Date of Expiration, B-330330, 2018 WL 6445752 (Comp. Gen. Dec. 10, 2018).

Thus, before withholding appropriated funds from obligation or expenditure, the ICA *requires* the executive branch to initiate and participate in a regimented and deliberate dialogue with Congress. The information that the executive branch provides under this process enables Congress to consider, on a case-by-case basis, whether it (and not the executive) wishes to alter spending laws, demonstrating that the narrow authority Congress granted to the executive in the ICA to freeze funding is conditioned upon the provision of information to Congress.

The President and OMB did not seek to use the authority in the ICA by identifying funding that would be eligible to be temporarily withheld under such law and transmitting the statutorily required special messages that would allow for limited temporary withholdings of such amounts. But even if they had transmitted a special message for the amounts subject to the categorical funding freeze, this would not have cured violation of the ICA and appropriations laws, as the ICA permits deferral only for narrow purposes. The funding freeze was not merely a procedural oversight, but a substantive violation of the statutory framework and Congress's appropriations power. That is, it was unconstitutional and illegal under the ICA and has the practical effect of harming Congress's ability to legislate future appropriations.

## CONCLUSION

President Trump's executive orders and the OMB memorandum assume that voters not only elected a Commander in Chief, but also vested, in one person, a legislative power to pause, reevaluate, and potentially override every law that was enacted before he took office. This Court should firmly reject that premise and affirm the order enjoining the executive orders and OMB memorandum in this case.

July 25, 2025                     Respectfully submitted,

Maura Eileen O'Connor       By: s/ Brian A. Sutherland
THE BRENNAN CENTER FOR              Brian A. Sutherland
JUSTICE AT NYU SCHOOL OF LAW        Melanie C. Gold
1140 Connecticut Ave., NW           COMPLEX APPELLATE
11th Floor, Suite 1150              LITIGATION GROUP LLP
Washington, DC 20036                96 Jessie Street
Telephone: (202) 249-7190           San Francisco, CA 94105
                                    Telephone: (415) 649-6700


*Attorneys for Amici Curiae 157 Members of Congress*

**CERTIFICATE OF COMPLIANCE**

Counsel for *Amici Curiae* 157 Members of Congress represents:

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5). This brief contains 4,067 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

July 25, 2025                            s/ Brian A. Sutherland
                                              Brian A. Sutherland

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

July 25, 2025                       s/ Brian A. Sutherland
                                    Brian A. Sutherland

# APPENDIX: LIST OF *AMICI CURIAE*

**Jamie Raskin**
  Representative of
  Maryland

**Rosa L. DeLauro**
  Representative of
  Connecticut

**Hakeem Jeffries**
  Representative of
  New York

**Katherine Clark**
  Representative of
  Massachusetts

**Pete Aguilar**
  Representative of
  California

**Joe Neguse**
  Representative of
  Colorado

**Gabe Amo**
  Representative of
  Rhode Island

**Jake Auchincloss**
  Representative of
  Massachusetts

**Becca Balint**
  Representative of
  Vermont

**Nanette Barragán**
  Representative of
  California

**Joyce Beatty**
  Representative of
  Ohio

**Wesley Bell**
  Representative of
  Missouri

**Donald S. Beyer Jr.**
  Representative of
  Virginia

**Sanford D. Bishop, Jr.**
  Representative of
  Georgia

**Suzanne Bonamici**
  Representative of
  Oregon

**Brendan F. Boyle**
  Representative of
  Pennsylvania

**Shontel Brown**
Representative of
Ohio

**Julia Brownley**
Representative of
California

**Nikki Budzinski**
Representative of
Illinois

**Janelle Bynum**
Representative of
Oregon

**Salud O. Carbajal**
Representative of
California

**André Carson**
Representative of
Indiana

**Troy A. Carter, Sr.**
Representative of
Louisiana

**Ed Case**
Representative of
Hawaii

**Sean Casten**
Representative of
Illinois

**Kathy Castor**
Representative of
Florida

**Sheila Cherfilus-
McCormick**
Representative of
Florida

**Judy Chu**
Representative of
California

**Gilbert R. Cisneros, Jr.**
Representative of
California

**Yvette Clarke**
Representative of
New York

**James E. Clyburn**
Representative of
South Carolina

**Steve Cohen**
Representative of
Tennessee

**J. Luis Correa**
Representative of
California

**Jim Costa**
Representative of
California

**Joe Courtney**
Representative of
Connecticut

**Angie Craig**
Representative of
Minnesota

**Jasmine Crockett**
Representative of
Texas

**Danny K. Davis**
Representative of
Illinois

**Madeleine Dean**
Representative of
Pennsylvania

**Diana DeGette**
Representative of
Colorado

**Suzan K. DelBene**
Representative of
Washington

**Chris Deluzio**
Representative of
Pennsylvania

**Mark DeSaulnier**
Representative of
California

**Maxine Dexter**
Representative of
Oregon

**Debbie Dingell**
Representative of
Michigan

**Lloyd Doggett**
Representative of
Texas

**Sarah Elfreth**
Representative of
Maryland

**Veronica Escobar**
Representative of
Texas

**Adriano Espaillat**
Representative of
New York

**Dwight Evans**
Representative of
Pennsylvania

**Cleo Fields**
Representative of
Louisiana

**Lizzie Fletcher**
Representative of
Texas

**Lois Frankel**
Representative of
Florida

**Laura Friedman**
Representative of
California

**Maxwell Alejandro Frost**
Representative of
Florida

**Jesús G. "Chuy" García**
Representative of
Illinois

**Robert Garcia**
Representative of
California

**Sylvia Garcia**
Representative of
Texas

**Dan Goldman**
Representative of
New York

**Maggie Goodlander**
Representative of
New Hampshire

**Josh Gottheimer**
Representative of
New Jersey

**Jim Himes**
Representative of
Connecticut

**Chrissy Houlahan**
Representative of
Pennsylvania

**Steny H. Hoyer**
Representative of
Maryland

**Jared Huffman**
   Representative of
   California

**Glenn F. Ivey**
   Representative of
   Maryland

**Jonathan L. Jackson**
   Representative of
   Illinois

**Sara Jacobs**
   Representative of
   California

**Pramila Jayapal**
   Representative of
   Washington

**Henry C. "Hank"
Johnson, Jr.**
   Representative of
   Georgia

**Julie Johnson**
   Representative of
   Texas

**Sydney Kamlager-Dove**
   Representative of
   California

**Marcy Kaptur**
   Representative of
   Ohio

**William Keating**
   Representative of
   Massachusetts

**Robin L. Kelly**
   Representative of
   Illinois

**Timothy M. Kennedy**
   Representative of
   New York

**Ro Khanna**
   Representative of
   California

**Greg Landsman**
   Representative of
   Ohio

**Rick Larsen**
   Representative of
   Washington

**George Latimer**
   Representative of
   New York

**Susie Lee**
Representative of
Nevada

**Teresa Leger Fernández**
Representative of
New Mexico

**Mike Levin**
Representative of
California

**Sam T. Liccardo**
Representative of
California

**Ted W. Lieu**
Representative of
California

**Zoe Lofgren**
Representative of
California

**Stephen F. Lynch**
Representative of
Massachusetts

**Seth Magaziner**
Representative of
Rhode Island

**John W. Mannion**
Representative of
New York

**Doris Matsui**
Representative of
California

**Lucy McBath**
Representative of
Georgia

**April McClain Delaney**
Representative of
Maryland

**Jennifer L. McClellan**
Representative of
Virginia

**Betty McCollum**
Representative of
Minnesota

**Kristen McDonald Rivet**
Representative of
Michigan

**James P. McGovern**
Representative of
Massachusetts

**LaMonica McIver**
    Representative of
    New Jersey

**Gregory W. Meeks**
    Representative of
    New York

**Grace Meng**
    Representative of
    New York

**Kweisi Mfume**
    Representative of
    Maryland

**Dave Min**
    Representative of
    California

**Gwen S. Moore**
    Representative of
    Wisconsin

**Joseph D. Morelle**
    Representative of
    New York

**Kelly Morrison**
    Representative of
    Minnesota

**Jared Moskowitz**
    Representative of
    Florida

**Seth Moulton**
    Representative of
    Massachusetts

**Frank J. Mrvan**
    Representative of
    Indiana

**Kevin Mullin**
    Representative of
    California

**Jerrold Nadler**
    Representative of
    New York

**Richard E. Neal**
    Representative of
    Massachusetts

**Eleanor Holmes Norton**
    Representative of the
    District of Columbia

**Johnny Olszewski**
    Representative of
    Maryland

**Frank Pallone, Jr.**
    Representative of
    New Jersey

**Jimmy Panetta**
    Representative of
    California

**Nancy Pelosi**
    Representative of
    California

**Brittany Pettersen**
    Representative of
    Colorado

**Chellie Pingree**
    Representative of
    Maine

**Mark Pocan**
    Representative of
    Wisconsin

**Nellie Pou**
    Representative of
    New Jersey

**Mike Quigley**
    Representative of
    Illinois

**Delia C. Ramirez**
    Representative of
    Illinois

**Emily Randall**
    Representative of
    Washington

**Luz M. Rivas**
    Representative of
    California

**Deborah K. Ross**
    Representative of
    North Carolina

**Andrea Salinas**
    Representative of
    Oregon

**Mary Gay Scanlon**
    Representative of
    Pennsylvania

**Jan Schakowsky**
    Representative of
    Illinois

**Bradley Scott Schneider**
    Representative of
    Illinois

**Robert C. "Bobby" Scott**
  Representative of
  Virginia

**Brad Sherman**
  Representative of
  California

**Mikie Sherrill**
  Representative of
  New Jersey

**Darren Soto**
  Representative of
  Florida

**Melanie A. Stansbury**
  Representative of
  New Mexico

**Greg Stanton**
  Representative of
  Arizona

**Marilyn Strickland**
  Representative of
  Washington

**Suhas Subramanyam**
  Representative of
  Virginia

**Eric Swalwell**
  Representative of
  California

**Mark Takano**
  Representative of
  California

**Shri Thanedar**
  Representative of
  Michigan

**Bennie G. Thompson**
  Representative of
  Mississippi

**Mike Thompson**
  Representative of
  California

**Dina Titus**
  Representative of
  Nevada

**Paul D. Tonko**
  Representative of
  New York

**Norma J. Torres**
  Representative of
  California

**Ritchie Torres**
    Representative of
    New York

**Lori Trahan**
    Representative of
    Massachusetts

**Derek T. Tran**
    Representative of
    California

**Lauren Underwood**
    Representative of
    Illinois

**Juan Vargas**
    Representative of
    California

**Marc Veasey**
    Representative of
    Texas

**Nydia M. Velázquez**
    Representative of
    New York

**Debbie Wasserman Schultz**
    Representative of
    Florida

**Maxine Waters**
    Representative of
    California

**Bonnie Watson Coleman**
    Representative of
    New Jersey

**George T. Whitesides**
    Representative of
    California

**Nikema Williams**
    Representative of
    Georgia

**Frederica S. Wilson**
    Representative of
    Florida